(120 So. 301)

**BREWER v. STATE.  (6 Div. 351.)**

Court of Appeals of Alabama.  Feb. 5, 1929.

Foster, Rice & Foster, of Tuscaloosa, for appellant.

Charlie C. McCall, Atty. Gen., for the State.

RICE, J.  Appellant was convicted of the offense of manslaughter in the first degree, and given a sentence to serve imprisonment in the penitentiary for a term of five years. It was shown that he shot and killed one Victor Shirley.

. We will undertake to make no more extended statement of the tendencies of the evidence than we think is necessary to illustrate the holdings we shall announce.  It was shown without dispute that deceased, one R. L. Sanford, and one Holley Logan, after getting together and riding about the country a bit, went to the store operated by appellant's father, Joe Buck Brewer, at night, in a car belonging to Sanford, and stopped said car in front of the said store;  that this store was adjoining, or but a short distance from, the dwelling house of the said Joe Buck Brewer, with whom was residing, at the time, appellant and his family.  From this point in the testimony there is a divergence between that offered on behalf of the state and that on behalf of the defendant (appellant).

The state's evidence was to the effect that Shirley, the deceased, got out of the car in which he was riding, at the store, and, walking toward the dwelling, called appellant, or his father, to come out to the store and let

them (Shirley's party) have something to eat; that appellant came out, opened the store, served them some food, and that, upon his announcing the amount of the bill for same, an argument arose between him and the deceased, who seemed to be rather taking the lead among the three seeking the food; that the argument was quieted, to an extent, by the peaceful intervention of Sanford, and an amount, smaller than the first announced by appellant, was agreed upon as a satisfactory sum, to all parties, to be paid for the said food, but that Shirley's party of three withdrew from the store to the car without paying, or offering to pay, the amount agreed upon; that the motor on the car was "started" by Shirley, preparatory to leaving; that appellant went to the dwelling house, procured a shotgun, returned near the car, and fired upon Shirley, who was at the time unarmed, and making no overt act toward appellant; that a short time later Shirley died from the effects of this gunshot wound. The state's evidence was to the further effect that neither Shirley nor the other members of his party were drinking, nor drunk, and that they were quiet and peaceable and orderly and well behaved, from the time of reaching the store, until the killing took place.

The testimony on behalf of appellant was to the effect that, when the Shirley party came to his father's store, Shirley came into the dwelling house unannounced, and that the first appellant, who was asleep, knew of Shirley's presence was when Shirley was in his (appellant's) bedroom; that at deceased's request he (appellant) went out and opened the store, and served the food, substantially as described in the state's testimony, but that deceased was drunk, and the other members of his party drunk, or drinking, and under the influence of whisky; that the members of said party were boisterous, and deceased belligerent; that the argument over the amount of the bill for the food being resolved into an agreement as to what same should be, said party, led by deceased, nevertheless failed and refused to pay same, but that, on the contrary, deceased brandished his pistol and threatened appellant; that, when and after the said Shirley party were seated in their automobile, the deceased pulled his pistol and, while in position to carry out his announced purpose, stated that he was going to kill the appellant, applying a vile epithet to him; that whereupon and thereupon appellant procured a shotgun lying near his hand, on a counter near the front of the store, and fired one shot, in defense of his life.

■ The state's testimony consisted of, in a very important way, that of the witnesses Sanford and Logan. This being true it would appear material as to whether Logan was drunk, or drinking, at the time of the difficulty, as bearing upon the credibility of the account he later gave of the transaction. As already stated, the testimony of the state and that of the defense were in hopeless conflict on this issue. On rebuttal, the state was allowed, over defendant's timely objection, to elicit, from two different witnesses, negative testimony to the effect that some two or three hours after the shooting Logan was "sober." In this ruling, or rather in these rulings, we think the trial court committed error. It is well known that occasions of sudden excitement have a tremendous sobering effect upon one under the influence of whisky; and it may well have been that this witness was drunk at the time of the difficulty, and then have been by it, and the intervening period, thoroughly sobered by the time these witnesses saw him. So their testimony proved nothing, and was immaterial. Being of a nature that tended to impeach the testimony of the defendant and his witnesses, and being of an immaterial matter, it should not have been allowed. It is not difficult to see how it may have worked prejudice to appellant's case, the amount of same depending upon the standing and general repute of the witnesses giving it.

■ It appears that the trial of appellant was had some weeks, or months, after the difficulty with deceased. The car in which deceased came to the store of appellant's father on the night of the killing was shown to be the property of R. L. Sanford, a witness in the case on behalf of the state, and to have been in Sanford's possession from the night of the occurrences out of which came the death of Shirley to the day of the trial. The testimony showed that some changes had been made in the condition or appearance of said car. Over appellant's timely objection, this car, although at the time not in the courtroom, or courthouse, was allowed to be "introduced in evidence," and the jury taken down on the street to view it. We must hold this action of the court to be prejudicial error. What could be established by a view of this car does not appear, and the sight of it, in its condition as described by the witnesses, and in connection with the other testimony, may have served to inflame the jury against the appellant. The situation is not altogether different from that where clothing worn by the deceased at the time of death is allowed to go before the jury trying the case against the slayer, when the exhibition of the said clothing neither proves nor tends to prove anything in the case.

■ On appellant's motion for a new trial it was made to appear without dispute that a written charge, lettered D, requested by him, and duly indorsed "Given" by the trial court, and read to the jury, had been, for some reason not shown by the record, left behind when the jury went out to consider their verdict, and said charge was not with them during their deliberations. This court, heretofore, in an opinion from which the writ-

er dissented, but which opinion. seems now to be the law governing us, had this to say:

"The statute [Code, § 9509] is imperative to the effect that such charges [as that mentioned in the paragraph next above] 'must be taken by the jury with them on retirement.' Such is the plain mandate of the statute, and, whatever may be our views as to what it ought to be, we see no escape from the conclusion that, having failed in this particular, the court should have granted the motion for a new trial. On this question, Coleman, J., speaking for the court, said: 'What we do decide is that special charges requested in writing, and "given," must be taken out by the jury.' Orr v. State, 117 Ala. 69, 72, 23 So. 696. When there is a plain mandate of the statute, a failure to observe such cannot be said as matter of law to be error without injury. The Legislature has fixed it as being a necessary part of a trial before a jury, and the courts must abide it." Hart v. State, 21 Ala. App. 621, 111 So. 47.

The holding in the Hart Case, quoted from, is decisive here, to the effect that it was error to overrule appellant's motion for a new trial, on the ground that the jury trying the case failed to take with them to their jury room all the written "given" charges.

██ The record discloses that, after the jury had retired to make up their verdict, a large number of the written "given" charges, which had been requested by appellant, were, by the members of said jury, torn up, or mutilated; some of same being used for "scratch pad" purposes. Undoubtedly treating these written charges in this way constituted misconduct on the part of the jury. And if said charges, or a copy of them, had not been substituted, in the record, we would unhesitatingly hold that the action by the members of the jury mentioned would have been an impelling ground for the granting of appellant's motion for a new trial. But since the defendant happened to have the copies, and since the copies were substituted, we see no reason or occasion for branding the said jurors with such willful violation of their duty as to call for a pronouncement that their action, mentioned, should nevertheless be a valid ground upon which appellant's motion for a new trial should have been granted. It is entirely possible that their action was merely careless and thoughtless, and since it does not affirmatively appear, or reasonably appear, that the appellant suffered, or could, under the circumstances, have suffered, any injury by their action, we will not hold it as error to have refused appellant's motion for a new trial as for this ground.

While it appears that the circumstances under which the argument arose between deceased and appellant were made rather aggravating by the conduct of deceased and his party in undertaking to, as it were, "take" the food served to them by appellant, without paying for same, and while the testimony on behalf of appellant was supported by that of a very large number of his neighbors and friends, of the highest standing and repute, as to his being a man of excellent character and reputation, yet, inasmuch as the judgment of conviction must be reversed on account of the errors hereinabove pointed out, we refrain from a consideration of the ground of appellant's motion for a new trial that the verdict was contrary to the great weight of the evidence.

The judgment of the lower court is reversed, and the cause remanded for another trial.

Reversed and remanded.