[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 500 
[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 501 
James Earl Sanders was indicted by the January 1981, term of the Tuscaloosa County Grand Jury for the December 20, 1980, murder of his estranged wife Pamela Sue Sanders. Ala. Code 1975, § 13A-6-2. At the time of her death, the victim was five months' pregnant with appellant's child. Trial was had with the jury finding him guilty as charged. He was sentenced to life imprisonment. Hence this appeal.
Appellant, on appeal, does not challenge the sufficiency of the State's evidence.
Sometime between 8:25 p.m. and 9:00 p.m. on December 20, 1981, the victim, her brother Dennis Kimbrell, and his girlfriend Denise Trawick returned from a family reunion to the home of the victim's parents located in the Flatwoods Community of Tuscaloosa County. Upon arriving at the house, they noticed the appellant's truck parked outside. Shortly thereafter, appellant walked from around the side of the house. All four entered the house and a short time later, appellant and Kimbrell unloaded some furniture from Kimbrell's truck. Afterwards, they went inside.
Appellant and the victim were left alone in the living room where they talked about reconciling their marital problems. After several minutes, Kimbrell and Trawick decided to leave and Kimbrell went to his truck. Moments thereafter, Trawick screamed to Kimbrell that appellant was pushing the victim. Before he could enter the house, Kimbrell heard three gunshots. Upon entering, Kimbrell saw appellant fire two or three more shots at his sister. He quickly moved toward the appellant, who then fired a shot at him. Kimbrell tackled appellant and disarmed him. Appellant stated, "Oh my God I have shot my wife." He then fled the scene. The victim died from a gunshot wound to the brain.
Appellant fled to Birmingham where, on December 20, he was arrested for public drunkenness. Afterwards, he went to Chattanooga, Tennessee, where he registered in a motel under a false name. He also listed on the room registration a false model and license plate number for the vehicle he was driving. From Chattanooga, appellant traveled to Hamilton, Mississippi, where relatives persuaded him to surrender.
 I
Appellant contends that the trial court erred in overruling his motions to quash the indictment and the petit jury venire. He asserts that the selection of the grand and petit juries solely from the Tuscaloosa County voter registration list caused both juries to be selected from an unfair and unrepresentative cross-section of the community, contrary to the Sixth Amendment to the United States Constitution. We do not agree.
We are not persuaded that compilation of a county's jury master list exclusively from that county's voter registration list, as is the practice in Tuscaloosa County, is constitutionally or statutorily impermissible. In fact, the applicable statute, § 12-16-57, Ala. Code 1975, suggests the registered voter list as a possible source for compiling the jury master list. By implication then, the statute authorizes the use of the registered voter list in compiling the jury master list so long as such a process will (1) foster a policy of having a fair cross-section of the population without denying qualified citizens the opportunity to serve, and (2) prevent exclusion from jury service of any citizen on account of race, color, religion, sex, national origin or economic status. In the case at bar, there is nothing in the record to suggest that either qualifying condition was violated.
Appellant does not meet the burden of showing that the jury selection process systematically and arbitrarily excluded a cognizable class from jury service, and he falls far short in demonstrating a violation of his Sixth Amendment right to trial by an impartial jury representing a fair cross-section of the community. United States v. Arlt, 567 F.2d 1295 (5th Cir. 1978); Durden *Page 503 v. Missouri, 439 U.S. 357, 99 S.Ct. 664, 58 L.Ed.2d 579 (1979);Hamling v. United States, 418 U.S. 87, 94 S.Ct. 2887,41 L.Ed.2d 590 (1974).
Additionally, the motions to quash were not timely filed in that they were filed after appellant's plea to the indictment and after expiration of the extended time within which to change pleas, file motions or plead further.
The trial court's actions in overruling appellant's motion to quash were entirely proper.
 II
Appellant contends that the trial court erred in sustaining the State's objections to certain questions propounded to witness Dennis Kimbrell on cross-examination. His questions were directed to the victim's use of marijuana. We quote the following pertinent portions of the record.
 "Q. You also knew did you not he did not like her smoking marijuana and expecting a baby?
"MR. FREEMAN: We object.
"THE COURT: Sustain the objection.
"A. No, sir.
 "THE COURT: There is no need to bring that in. If he objected to her smoking marijuana has nothing to do with this case at all.
 "MR. SMITH: I object because it makes it look like she did and she didn't and I object to it.
"THE COURT: I know it and I agree with you.
 "Q. I will ask you this then. You had been smoking marijuana before you got to the house that afternoon, had you not?
"A. No, sir, I didn't.
 "Q. And you had been smoking marijuana with Pam before that afternoon, had you not?
"A. Yes, sir, I have.
"Q. And at the house where Pam and you were living?
"A. Yes, sir.
 "Q. And he told you not to have her smoking marijuana with her pregnant did he not?
"A. No, sir, that is not correct.
"Q. That is not correct?
"A. No, sir.
 "Q. He caught you and Pam smoking marijuana did he not?
"A. No, he didn't.
"Q. He saw you all smoking, did he not?
"A. Yeah, when he was around.
"Q. So you were smoking it with her?
"A. Yes, sir.
 "Q. You heard him say she shouldn't be doing that while she was pregnant?
"A. No, I didn't.
 "Q. Now to test your recollection as to the events of that afternoon you testified to you had been smoking marijuana how recently before this incident you described?
"MR. SMITH: Judge, we object.
 "THE COURT: I sustain the objection. This has absolutely nothing to do with this."
To the first question, Kimbrell negatively replied, albeit after the trial court had sustained the State's objection. The State did not move to have the answer excluded. In this instance, we find no error in the trial court's ruling. Yatesv. State, 390 So.2d 32 (Ala.Cr.App. 1980); see generally Brownv. State, 392 So.2d 1248 (Ala.Cr.App. 1980); cert. denied,392 So.2d 1266 (Ala. 1981).
As to the second instance, the form of appellant's question was objectionable. Further, the testimony of Kimbrell does not indicate any difficulty in his recalling the events of December 20. In addition, during his direct examination, appellant testified to the substance of that which he elicited from Kimbrell. Consequently, we find no error in the trial court's ruling.
 III
Appellant contends that the trial court erred in denying him the right to rebut the State's evidence of his flight after he had shot the victim. *Page 504 
On direct examination, Tuscaloosa Sheriff's Department Investigator Robert McFerrin testified that appellant went to Mississippi where he saw him and took him into custody. McFerrin then transported appellant to Tuscaloosa where he was charged with murder.
On cross-examination, McFerrin stated that he had received a report concerning appellant and afterwards traveled to Mississippi and took him into custody. However, to the questions of whether appellant surrendered and waived extradition, respectively, the State's objections were sustained.
During both his direct and cross-examination, appellant testified that after fleeing the scene and traveling to Birmingham and Chattanooga, he went to Hamilton, Mississippi, where he had relatives residing, and voluntarily surrendered to the local authorities.
The State's evidence proved that appellant fled the scene after the shooting. When the flight of an accused is established, the accused, in response to such, may prove that he voluntarily surrendered. Allen v. State, 146 Ala. 61,41 So. 624 (1906); Carden v. State, 84 Ala. 417, 4 So. 823 (1888);Pierce v. State, 51 Ala. App. 166, 283 So.2d 618 (1973); C. Gamble, McElroy's Alabama Evidence, § 190.01 (3) (3rd ed. 1977).
Any error in excluding the testimony of McFerrin in this regard was rendered harmless by the subsequent disclosure of facts of substantially the same effect through the testimony of appellant. Error in excluding evidence is harmless where evidence of the same substance and effect is substantially placed before the jury. Smith v. State, 393 So.2d 529
(Ala.Cr.App. 1981); Johnson v. State, 378 So.2d 1164
(Ala.Cr.App.), cert. denied, 378 So.2d 1173 (Ala. 1979).
 IV
Appellant contends that the trial court erred in allowing the State to cross-examine him concerning prior violent acts he perpetrated against the victim.
On cross-examination, appellant initially testified that he had struck the victim only once before the instant incident. He denied striking her two or three weeks prior to the instant incident and denied knowledge of the victim being hospitalized around that time. In addition, he denied ever firing a gun at her. Subsequent thereto, the State asked the following questions:
 "Q. Mr. Sanders, the wife you told us about that you said you loved so much got a warrant or had to get a warrant against you back on April 15th, 1980, didn't she?
"MR. THOMPSON: We object, Your Honor.
. . . .
 "Q. So actually you had struck her on at least one occasion before?
"A. Yes, sir, I sure did.
"Q. You kicked her, you say?
"A. Yes, I did.
 "Q. Well, are there any other times that you might not have told us about that you struck your wife or did strike your wife?
 "A. There are some times I told you she threw things at me a lot, but I don't believe there was another time I hit her or struck her or anything.
 "Q. Well, could it be that maybe you have struck her and caused her to have to go to some hospital or doctor somewhere to seek medical attention?
"A. On one occasion.
"Q. Oh, there was one occasion?
"A. Yes, sir.
"Q. Now, when was this?
 "A. It was when I came home one night and she was in the living room drinking whiskey with a guy that she was supposed to part with and went to California, went to California with two dudes in a truck.
 "Q. Well, I don't recall you mentioning any of that earlier.
"A. I was trying to keep it out of court."
During his direct examination, appellant testified to several threats made by the *Page 505 
victim or her family on his life prior to the fatal shooting. He stated that because of such he carried a gun with him on the night of the shooting.
Throughout the testimony of State's witnesses Kimbrell and Trawick, as well as that of appellant, there is evidence of a breakdown in the marital relationship between the victim and appellant. In fact, the record reveals that they were divorced only shortly before the victim's death. In addition, much of appellant's testimony deals with his attempts to reconcile their marital difficulties.
The instant case is analogous to those cases dealing with the admission of prior violent acts by the accused against his spouse. This is especially true since appellant and the victim had been divorced less than one month before the victim's death. In Akers v. State, 399 So.2d 929, 931 (Ala.Cr.App. 1981), the general rules governing admission of prior violent acts between spouses are stated:
 "In a prosecution for the murder of a wife by her husband, their general relations toward each other and evidence of actual cruelty by the defendant upon his wife prior to the shooting are admissible on the question of whether the shooting was intentional or accidental, . . . and on the questions of malice and intent. . . . While evidence of previous difficulties should not be so remote in point of time as to have no legitimate bearing on the circumstances of the homicide or the points at issue, . . . this is a matter largely within the discretion of the trial judge. . . ." (Citations omitted.)
See also White v. State, 380 So.2d 348 (Ala.Cr.App. 1980); see generally Bennefield v. State, 281 Ala. 283, 202 So.2d 55
(1967); Miller v. State, 344 So.2d 209 (Ala.Cr.App. 1977).
We find the above testimony relevant to establish whether the killing was intentional or accidental as well as to refute appellant's earlier claims that he had only once physically harmed the victim. Furthermore, we note that appellant admitted committing the charge stated in the warrant, as well as one other prior incident. This testimony was admitted without objection. In light of these circumstances, even if there was error initially in admitting appellant's testimony, such was harmless. White, supra; A.R.A.P. 45.
 V
Appellant draws our attention to numerous instances where he contends that the trial court impermissibly commented upon the evidence.
 A
Two complained of instances occurred during the voir dire of the jury venire. Appellant had inquired of the venire whether his consumption of alcohol would prejudice them against him. After three prospective jurors responded, the trial court stated that it expected to charge the jury that voluntary intoxication was not a defense to a crime. It postponed any further comment on the subject until after the State asked several more specific questions to the prospective jurors who had initially responded to appellant's general question. At that point, the trial court reiterated its earlier statement. It stated that it would charge the jury as to the law as was its duty. It further stated that it didn't think that "we should go into that question." The trial court stated that "this is not a case of violating the prohibition law at all. That has nothing to do with it. That is not an issue in this case." Appellant excepted but the trial court did not rule upon it.
Afterwards, the trial court gave a lengthy instruction concerning the area of intoxication as a defense. It pointed out that it did not know what the evidence would disclose, and would charge the jury on such if it was necessary. The trial court expressed its concern that the jury venire may have become confused by the questions propounded by appellant and the State and did not want further inquiry into the area. Immediately thereafter, appellant objected to the above instruction. No ruling was made on his objection. *Page 506 
Initially, we fail to see in what regard the trial court improperly commented upon the evidence. There was no evidence before the trial court at the time the above comments were made. In addition, appellant pled "not guilty" and "not guilty by reason of insanity." Thus, the trial court was not alerted to the prospect that appellant would contend that his intoxication would excuse him from culpability until he queried the jury venire concerning such. Moreover, a jury had not been empaneled at the time the comments were made. Rather, voir dire examination of the jury venire was being conducted.
The trial court merely responded to an area of inquiry initiated by appellant which it felt was in need of clarification and explanation. It appears that the trial court was concerned that the jury venire may have been confused by the questions asked and such could potentially lead to the excusal of otherwise qualified prospective jurors. Moreover, the prospective jurors who responded to appellant's initial inquiry were excused for cause upon appellant's challenge.
A review of the record leads us to the conclusion that the trial court's comments do not constitute an impermissible comment upon the evidence.
Furthermore, there were no rulings on appellant's objections concerning such, no objection to the trial court's failure to rule, no motion to exclude the comments, or request for further instructions. Thus, the instant issue was not properly preserved for review. Parker v. State, 406 So.2d 1036
(Ala.Cr.App.), cert. denied, 406 So.2d 1041 (Ala. 1981); Grossv. State, 395 So.2d 485 (Ala.Cr.App. 1981).
 B
The next instance deals with the trial court's rulings during the cross-examination of State's witness Kimbrell, previously discussed in Part II above. Additionally, appellant takes issue with the below quoted comments of the trial court occurring after the colloquy quoted in Part II, above:
 "THE COURT: I am telling you now to shut up about this marijuana business or I will put you in contempt. You will obey my ruling. I am running this case.
"MR. THOMPSON: I am doing the best I can.
 "THE COURT: When I tell you to quit talking about this witness having smoked marijuana I mean it. Now go ahead and try it like it ought to be tried.
"MR. THOMPSON: Yes, sir, Judge we ask for a mistrial.
"THE COURT: Overrule the motion.
"MR. THOMPSON: We except."
We find no error in the trial court's comment agreeing with the assertion of the assistant district attorney quoted in Part II above. Carmichael v. State, 197 Ala. 185, 72 So. 405 (1916).
While some of the trial court's comments would appear to bring appellant's counsel into contempt before the jury, as proscribed in Dennison v. State, 17 Ala. App. 674, 88 So. 211
(1921), it is incumbent upon the trial judge to conduct an orderly trial and insure to the best of his ability that no misunderstanding of the testimony of the witnesses exists. His duty is more than that of a mere moderator.
The matter of whether Kimbrell had smoked marijuana with appellant or the victim and the frequency thereof would only have relevancy as to Kimbrell's ability to accurately recall the events surrounding the shooting. His testimony in no wise suggests anything other than an accurate account of the events of that evening. The testimony of Trawick and the State's investigators substantiates this conclusion. At the conclusion of the trial, the trial judge instructed the jury to put aside any actions of his which would influence their decision and appellant's right to a fair trial.
We do not deem the trial court's actions to have constituted reversible error. Sprinkle v. State, 368 So.2d 554 (Ala.Cr.App. 1978), cert. denied, 368 So.2d 565 (Ala. 1979). *Page 507 
 C
The trial court's comments occurring during the cross-examination of Trawick concerning her use of marijuana on the day in question did not constitute an impermissible comment upon the evidence. Sprinkle, supra; Dennison, supra.
 D
We find no error in the trial court's comments concerning appellant's offer of two photographs allegedly of the exterior of the Kimbrell residence, wherein the shooting occurred, through the cross-examination of Trawick. The proper predicate for authentication and admission of them was never established. Their relevancy is questionable, as was evidenced by the tenor of the trial court's remarks and the fact that no relevant evidence was discovered outside of the house. We find no error in these remarks.
 E
As to the trial court's comments concerning a photograph of the victim taken at the autopsy, the photograph depicted a wound to the inside of the victim's bottom lip. The photograph was properly authenticated and did not contain any objectionable matter. Appellant had previously viewed the photograph sometime prior to its admission. We find no error in the trial court's comment, "Well, I don't think it is objectionable."
 F
The trial court merely explained its reasons and its rulings during the cross-examination of McFerrin. Such does not constitute a comment on the evidence. McDonald v. State,340 So.2d 80 (Ala.Cr.App.), cert. denied, 340 So.2d 84 (1976).
 G
Appellant again attempted to introduce the photographs of the Kimbrell residence through his cross-examination of McFerrin. The same reasons for sustaining the trial court's remarks in "D" above apply herein.
 H
The qualifications of the pathologist who testified as to the results of the autopsy performed on the victim were never challenged by appellant. His opinion as to the cause of a laceration of the victim's scalp, which opinion had previously been admitted into evidence without objection, drew an objection from appellant on redirect examination after the opinion was given. The objection was overruled and no motion to exclude was made by appellant. The trial court's remarks regarding the doctor as an expert who was highly qualified to express an opinion on such matters were not prejudicial to appellant and did not constitute a comment on the evidence.
 I
The trial court's comment after overruling appellant's objection to a question put to him by the State on cross-examination was an explanation for its ruling. McDonald, supra.
 J
The trial court commented in response to appellant's request to withhold a ruling on a chart offered into evidence by the State. The court stated, "I don't mind at all, although I see nothing objectionable about it." This was not a comment upon the evidence prejudicial to appellant. The comment, after the admission of the State's photograph of the towels and sheet used to stop the victim's bleeding, was merely an explanation and not prejudicial, especially since the photograph was clearly admissible. Carpenter v. State, 400 So.2d 417
(Ala.Cr.App.), cert. denied, 400 So.2d 427 (Ala. 1981);McDonald, supra.
 K
The last two instances deal with comments made about the evidence of appellant's flight. In one instance, the trial court referred to the preliminary hearing testimony of Kimbrell concerning appellant's departure from the scene. Appellant *Page 508 
had just read that testimony in an attempt to contradict Kimbrell's direct testimony. The court said the testimony was merely what "he testified to. He said he [appellant] wasn't running. I don't see any point." The next comment occurred during the State's closing argument where the State had commented upon the appellant's flight from the scene. Appellant objected, stating that there was "no evidence he ran." The court stated, "I disagree with you and I overrule. Let the jury decide what the evidence is."
In both instances, the trial court's comments were proper and not comments upon the evidence. Kimbrell's preliminary hearing testimony was consistent with that which he gave at trial. Evidence of the speed at which appellant fled the scene was introduced. Thus, no error occurred in these instances.
Taken individually and collectively, we find no error in the comments of the trial court.
 VI
Appellant claims several instances where the trial court displayed its bias and prejudice against him to the jury and, thus, prejudiced the jury against him.
 A
Appellant's first claim of error concerns that which was previously decided in Part V-A of this opinion and will not be reiterated here.
 B
The next incident occurred during the State's examination of Kimbrell where he was identifying several photographs. Apparently, appellant's counsel began to examine them before the State had completed its examination of Kimbrell and before it had offered them into evidence. The trial court admonished appellant's counsel to, "Keep your hands off, please. You can have the witness later. Let the District Attorney question the witness then you may examine him, sir." Appellant made no objection to the comments, did not move that they be excluded, and did not request that the jury be instructed to disregard them. Thus, nothing is preserved for our review. Williams v.State, 410 So.2d 911 (Ala.Cr.App. 1982); Carpenter, supra.
 C
The comments during appellant's cross-examination of Kimbrell concerning the use of marijuana have previously been discussed in Parts II and V-B of this opinion, and will not be reiterated here.
 D
Likewise, the trial court's comments occurring during the cross-examination of Trawick have been fully discussed in Part V-C of this opinion.
 E
The trial court's admonishment of appellant's counsel after he had attempted to offer into evidence the pants allegedly worn by appellant on the day of the killing was proper. Apparently, both parties before trial had conferred and disposed of certain issues. The trial court was of the opinion that the controversy surrounding the pants had been settled. When it arose at trial, the court exhibited frustration at the apparent uncooperativeness of the parties and would not admit the pants into evidence. Admission of the pants may have supported appellant's theory that he and the victim struggled over control of the gun and that appellant was wounded during the fracas, but such would not have outweighed the remaining evidence against him. We find no error in this regard.
 F
The trial court did not err in initially not allowing appellant to question a State's witness prior to his being questioned before the jury. The trial court indicated that appellant would have an opportunity to cross-examine the witness. Counsel for appellant continued to insist upon talking to the witness prior to the witness *Page 509 
testifying. The State agreed to allow appellant the opportunity to talk to the witness, to which the trial court acquiesced. We find no error in the comments of the trial court. Although harsh, the comments were made out of apparent frustration with appellant's counsel and were not intended to bias or prejudice the appellant.
 G
The trial court was within the sound exercise of its discretion in denying appellant's counsel the opportunity to voir dire a State's witness during the State's direct examination. Shelton v. State, 384 So.2d 869 (Ala.Cr.App.),cert. denied, 384 So.2d 871 (Ala. 1980).
In closing, we find apropos the following quotation fromAllen v. State, 290 Ala. 339, 276 So.2d 583, 586 (1973):
 "The trial judge is a human being, not an automaton or a robot. He is not required to be a Great Stone Face which shows no reaction to anything that happens in his courtroom. Testimony that is amusing may draw a smile or a laugh, shocking or distasteful evidence may cause a frown or scowl, without reversible error being committed thereby. We have not, and hopefully never will reach the stage in Alabama at which a stone-cold computer is draped in a black robe, set up behind the bench, and plugged in to begin service as Circuit Judge."
 VII
Appellant contends that the trial court erred in overruling his motion for a mistrial based on the following portion of the State's closing argument:
 "MR. FREEMAN: Then there was talk about a small calibre gun. Well, I imagine he used the gun he had and I imagine the Pope and President Reagan can tell you the danger of a twenty-two pistol."
Counsel for both the defendant and the State are allowed wide latitude on drawing reasonable inferences from the evidence in their closing arguments. Both have the right to present their impressions from the evidence, if reasonable, and argue every legitimate inference. Manigan v. State, 402 So.2d 1063
(Ala.Cr.App.), cert. denied, 402 So.2d 1072 (Ala. 1981). Statements of counsel in argument to the jury must be viewed as in the heat of debate, and such statements are usually valued by the jury at their true worth and are not expected to become factors in the formation of the verdict. Hayes v. State,395 So.2d 127 (Ala.Cr.App. 1980), cert. denied, 395 So.2d 150 (Ala. 1981).
To constitute reversible error, the statement of counsel in argument must be made as a fact which is unsupported by any evidence, and the argument must be pertinent to the issues at trial or its natural tendency must be to influence the finding of the jury. Manigan, supra.
The above quoted comment is closely akin to an appeal for law enforcement. Moberg v. State, 385 So.2d 74 (Ala.Cr.App. 1980). The comment has a factual basis as the victim was shot with a .22 caliber automatic pistol and is not violative of the rule expressed in Manigan. Consequently, we find no error in the trial court's ruling.
 VIII
Appellant asserts that the trial court improperly charged the jury on the issue of insanity.
The trial court, in its oral charge, made several references to appellant's alleged insanity in the present tense, stating, "You consider the . . . evidence . . . here to decide whether or not he is insane." Nevertheless, throughout this portion of its charge, the trial court properly instructed the jury that they must find that appellant's insanity existed at the time of the crime. The trial court's oral charge fully and fairly covered the law on insanity as a defense to a crime. Ala. Code 1975, § 13A-3-1. In addition, prior to the jury's commencing its deliberations and after listening to appellant's objections, the trial court corrected its oral charge and modified it according to appellant's suggestions. It again correctly charged the jury on the law. *Page 510 
Moreover, appellant testified that he must have been insane when the fatal shooting occurred, but was not insane when he arrived at the Kimbrell residence as "[he] knew what [he] was there for." Appellant also stated that over his entire life he had been insane only a few seconds.
We find no error in the trial court's use of the phrase "is insane" when viewed in light of its whole charge. Jackson v.State, 412 So.2d 302 (Ala.Cr.App. 1982). Likewise, we find no error in the trial court's reinstructing the jury on this area of the law in order to correct any misstatement thereof or confusion therein.
Moreover, appellant did not object to the refusal of his written charges on insanity. Thus, nothing is presented for our review. Grace v. State, [Ms. 1 Div. 355, June 29, 1982] (Ala.Cr.App. 1982); Allen v. State, 414 So.2d 989 (Ala.Cr.App. 1981), aff'd, 414 So.2d 993 (Ala. 1982).
 IX
Appellant also insists that the trial court erroneously instructed the jury on the law concerning intoxication as a defense to the instant crime. We quote the pertinent portion of the trial court's oral charge.
 "Something has been said here about intoxication. Well, voluntary intoxication, of course, never justifies a person to commit a criminal act and the commission of a crime except if he was in a state by the evidence and the case shown to be an extreme case of intoxication so as to be idiotic so you would all agree he could not form a criminal intent, that he was in such state of extreme intoxication, voluntary intoxication, you would be justified if you find he was in such state of extreme intoxication in finding him not guilty or at least it might could be reasonable doubt but that is something else for you ladies and gentlemen to consider."
The testimony of appellant established that throughout the day of December 20, he drank over six beers. He stated that he had bought two six-packs of beer and drank several at a pub prior to going to see the victim. No testimony was offered as to appellant's physical condition or degree of intoxication. The only glimmer of his mental state was his testimony that while at the scene he was "confused" "emotionally upset," and "in a daze."
Appellant takes issue with the use of the word "idiotic" in the above quoted portion of the trial court's oral charge.
Although we are not convinced that the evidence adduced at trial would support a conclusion that appellant was intoxicated at the time of the fatal shooting, we can understand the trial court's willingness to give appellant the benefit of any reasonable doubt on the issue and to charge the jury accordingly. While use of the term "idiotic," in describing the mental state necessary for one to be intoxicated and, thus, reduce or excuse his culpability, could have been replaced by a different phrase, the trial court's oral charge clearly defines the term in the context of which it was used. The oral charge was a correct proposition of law and did not tend to confuse or mislead the jury. Ala. Code 1975, §§ 13A-2-2 (3), -3-2, -6-2. Consequently, we find no error in the trial court's oral charge.
Appellant made no objection to the refusal of his written requested charge on intoxication. Therefore, nothing is preserved for our review. Grace, supra; Allen, supra.
 X
Appellant contends that the trial court erred to reversal in refusing to reduce its additional oral charge to writing.
After the jury had been deliberating for some time, it returned to the courtroom and asked "if it would be possible to have a copy of the definitions of four different words. . . ." The trial court then re-charged the jury orally as to the definitions. Afterwards, the foreman of the jury announced to the trial court that the charges were satisfactory. The jury was excused and prior to its resuming its deliberations, appellant made his objection. *Page 511 
The jury is entitled at all times to have access to the trial court for such additional instructions as they may require.Tillison v. State, 32 Ala. App. 397, 27 So.2d 41, aff'd,248 Ala. 196, 27 So.2d 46 (1946). Such does not give added weight or place undue emphasis on that portion of the oral charge.Laffity v. State, 423 So.2d 280 (Ala.Cr.App. 1982).
Ala. Code 1975, § 12-16-12, states that "The charge of the judge must be taken down by the court reporter or by some stenographer appointed by the court and reduced to writing and filed as a part of the record proper of the case, unless both parties or their counsel waive the reporting and making the charge a part of the record." See A.R.Crim.P.Temp. 14. This section places no duty upon the trial court to reduce its oral charge to writing in order that the jury may have it before them while deliberating. Such has not been a legal requirement since the adoption of the Code of 1923. Jackson v. State,264 Ala. 528, 88 So.2d 206 (1956).
To have granted the jury's request to have the additional charge reduced to writing would have undoubtedly placed undue emphasis on that portion of the oral charge and certainly would have been objected to by appellant. The trial court was under no duty to submit either its oral charge or additional charges to the jury in writing. We find no error in the trial court's ruling.
 XI
Lastly, appellant contends that the trial court erred in not including his given written charges in the record on appeal and erred in failing to send them with the jury after submission of the case to it.
The first part of appellant's contention is without merit, as his given written charges appear in the record. In any event, it is appellant's burden to bring the record before the appellate court. He and his counsel have the duty of checking the record before submitting the appeal. It is their duty to file a correct record. Procedural tools available to appellant to accomplish such include Alabama Rule of Appellate Procedure 10. Harris v. State, 420 So.2d 812 (Ala.Crim.App. 1982).
The record reflects that the trial court read appellant's given requested charges to the jury. It also reflects the trial court's informing the jury that the bailiff would bring the physical evidence to it. The record does not specifically state that the given charges were given to the jury to carry with them into the jury room. Nor does it reflect any direction or order by the trial court to the bailiff or jury to carry the given charges to the jury room.
It appears that appellant had no knowledge of the alleged failure of his given charges to reach the jury during its deliberations. Consequently, no objection appears in the record as in Pruett v. State, 408 So.2d 202 (Ala.Cr.App. 1981). Thus the proper vehicle for raising the issue would have been through his motion for a new trial. Appellant did not raise as a ground for granting his motion for a new trial the above contention. Thus, nothing is preserved for our review. Pruett, supra; Dalrymple v. State, 405 So.2d 725 (Ala.Cr.App.), cert.denied, 405 So.2d 728 (Ala. 1981); Potter v. State, 46 Ala. App. 95, 238 So.2d 894 (1970); Brewer v. State, 23 Ala. App. 35,120 So. 301 (1929).
We have reviewed appellant's contentions on appeal and find no error. This cause is hereby affirmed.
AFFIRMED.
All the Judges concur. *Page 512