Dougward Jewel Frazier was indicted for theft of property in the second degree in violation of § 13A-8-4, Code of Alabama 1975. The jury found him "guilty of theft in the second degree as charged in the indictment". He was sentenced to life imprisonment pursuant to the Habitual Felony Offender Statute. Following an appeal, he was re-sentenced to 25 years' imprisonment.
The appellant was arraigned immediately prior to the beginning of the proceedings in the case.
On the day of trial (November 6, 1985), immediately before jury selection had begun, the appellant moved for a continuance on the grounds that he had been given the names of two witnesses only two days before, on November 4. One of the witnesses was Loretta Thompson who had been arrested at the scene of the crime for which the appellant was charged. The other was Joe Thompson, her husband, who was admitted by the prosecutor as having been the man who drove the get-away car. (R. 90).
Following his arraignment, Jack Tucker, a deputy with the Hoover Police Department, testified on voir dire that he had investigated a shoplifting incident in Hoover, Alabama on April 20, 1985. The shoplifting occurred at a T.J. Maxx store there. A woman named Loretta Snow Thompson was arrested at the time of the occurrence. No other suspects were arrested at that time. *Page 1146 
Later, on the 6th and 13th of May, 1985, Tucker conducted two different photo lineups. The first was conducted for Mr. Robert Harris, a store employee, at this store in Hoover. The photo spread consisted of six photos.
At the time of the occurrence, Mr. Harris was summoned by a security guard at the store. When Ms. Thompson and the other perpetrator walked out of the store, the security guard, Ms. Covington, detained Thompson. The male perpetrator continued on to a waiting vehicle. Mr. Harris tried to stop the perpetrator and was struck. The vehicle departed with the perpetrator inside.
Tucker testified that, at the time the photo spread was conducted for Mr. Harris, the police were looking for two men. The description given to Tucker of the male perpetrator who left the store indicated that he was clean shaven; the driver of the get-away car was described as having a beard.
Upon examination of the first photo spread, Tucker stated that three of the six individuals had a small beard or facial hair on the chin. Mr. Harris identified the appellant's picture during the photo line-up as being that of the man who had struck him even though the appellant was wearing a beard or goatee in the picture in question. Harris stated that, even though the photo showed a beard, he recognized the appellant's facial features.
Tucker stated that he did not show this spread to anyone else. The photo of appellant used in the first spread was two years old.
Tucker showed the second photo spread to Martha Dozier Covington, a security officer at the store at the time of the shoplifting. Ms. Dozier had previously described the perpetrator as being well-dressed, six feet tall or over, 165-170 pounds, clean shaven and wearing a coat and tie. In the second spread a more recent photo of this appellant was used. During the second photo line-up, Ms. Covington identified the appellant as the perpetrator.
Tucker included the appellant's photo in this line-up after talking to Ms. Thompson's husband and getting the tag number of a car which Mr. Thompson believed would lead Tucker to the person who had committed the crime with his wife. The vehicle license was registered in the appellant's mother's name. Tucker described the perpetrator to the appellant's mother and obtained the appellant's name. He then obtained the photo of the appellant from the sheriff's department. Tucker identified the individual whom Ms. Covington had picked from the photo spread as being this appellant. To Mr. Tucker's knowledge, neither Ms. Covington nor Mr. Harris discussed the photo line-up. In the second photo spread the appellant is the only person wearing a tie. He is also the only person who is completely clean shaven.
Robert Earl Harris, an employee at the store at the time of this shoplifting incident, testified that he watched the appellant and Ms. Thompson walk through the store after being notified by the security department. He followed them to the front of the store. Ms. Thompson was stopped as she left the store.
When Harris tried to stop the appellant, he was struck by him. The appellant then jumped in a car and left. Harris described the appellant to the police on the day of the theft as wearing a black suit and white tie, and being about six feet tall and clean shaven. Harris observed the appellant for about five minutes. Harris identified the appellant as the person he had picked out of the photo spread. Harris testified that the appellant was the only man in the photo spread he viewed who had a full beard. He testified that he discussed the photo line-up with Ms. Covington but was not sure whether this was before or after she had viewed the other photo spread.
Ms. Covington testified that she was the head of security at the store on the day in question. She arrested Loretta Thompson following the theft. She later viewed a photo line-up. She gave a description of the other perpetrator of the theft as being about six feet tall, 160 pounds, with a dark suit, a light shirt and a dark tie. Ms. Covington testified that she viewed the appellant during the course of the theft for, *Page 1147 
at most, ten minutes. She viewed two sets of photos on two different days. The first group of photos she looked at was the set that Mr. Harris viewed. She was unable to identify the appellant from those photos. Ms. Covington identified this appellant as the one whom she saw in the store "shoplifting on the day in question."
The appellant's mother, Althata Marshall, verified that she spoke with Officer Tucker. She said that Tucker asked her if she had a son named Dougward who had a beard and was about six feet tall. She responded that she had a six-foot tall son named Dougward but that he did not wear a beard. Tucker then told her to tell Dougward to get in touch with him.
 I
The appellant contends that the trial court committed reversible error in arraigning the appellant and proceeding to trial on the same afternoon. He argues that this "error" denied him the opportunity to move against the indictment prior to trial. We find no reversible error here.
In Woodyard v. State, 428 So.2d 136, (Ala.Cr.App. 1982), aff'd, 428 So.2d 138 (Ala. 1983), cert. denied,462 U.S. 1136, 103 S.Ct. 3120, 77 L.Ed.2d 1373 (1983), this court held that the arraignment of a defendant in the presence of thejury after all the evidence had been presented was not error. Woodyard, supra. We based our decision onNewsome v. State, 49 Ala. App. 248, 270 So.2d 680
(1972) which held that, at least where it is obvious that the trial was "conducted with the full consent and participation of the appellant," where no formal plea has been entered, this defect may be cured "at any time before or during the trial before the jury retire[s]." Newsome, supra p. 251,270 So.2d 680.
Certainly arraignment of a defendant at an earlier
point in the proceedings, i.e., the day of the trial
in this case, rather than immediately before the juryretires would not constitute reversible error. SeeCarroll v. State, 445 So.2d 952 (Ala.Cr.App. 1983) (arraignment after jury impanelled held not improper), cf.Rucker v. State, 340 So.2d 825 (Ala.Cr.App. 1976) (where defendant waived right to reading of the information, trial court's subsequent and complete failure to arraign defendant "was a technical and harmless omission that did not deny defendant any rights." Supra p. 828). See generallyHeadley v. State, 51 Ala. App. 148, 283 So.2d 458
(1973) appeal after remand, 55 Ala. App. 303, 314 So.2d 905, cert. denied, 294 Ala. 758, 314 So.2d 908 (1975).
Moreover, even had the arraignment procedure been improper, it would not have prejudiced the defendant in light of the fact that he was represented by counsel at a pre-trial proceeding some two months before trial and had, therefore, ample time to move against or file a motion as to the indictment prior to trial. A.R.A.P. 45. See also Bush v. City of Troy,474 So.2d 164 (Ala.Crim.App. 1984), affirmed Ex ParteBush, 474 So.2d 168 (Ala. 1985), and authorities cited.
 II
The appellant contends that the trial court abused its discretion in denying his motion for a continuance. As grounds for his motion, the appellant asserted that he had been given the names of two witnesses who were alleged accomplices in the theft just two days prior to the day of trial and needed time to have them served.
 "In general, motions for continuances in criminal cases are matters within the discretion of the trial court. The measure of impropriety which must be shown by an appellant to hold the court in error for denial of a motion for continuance of a criminal trial is gross abuse."
Richardson v. State, 476 So.2d 1247 (Ala.Crim.App. 1985) (Citation omitted).
In view of the fact that a pre-trial proceeding was held sometwo months prior to trial in this case, at which time the appellant's counsel was appointed, we cannot say that the trial judge grossly abused his discretion in denying appellant's motion for continuance. The appellant had ample time in which to secure these witnesses. SeeRichardson, supra. "No one is in a better position than was the trial judge to *Page 1148 
determine whether such action should have been taken."Primm v. State, 473 So.2d 547 (Ala.Cr.App. 1984).
Furthermore, a review of the record indicates that on at least one previous occasion the court attempted to aid
appellant in procuring the desired witnesses. (R. 162163). SeeConnor v. State, 447 So.2d 860 (Ala.Cr.App. 1984).
 III
Appellant objects to four of the prosecutor's statements made during closing arguments as being "prejudicial" and "improper". We quote the pertinent portion of the State's closing argument:
 "MR. NELSON: I'll tell you what, ladies and gentlemen, it's about time in this community for stuff like this to stop. And there's only one way to stop it.
 "MR. MATHIS: Objection, Your Honor. I don't think that's proper argument, arguing about what goes on in the community. We're talking about one crime, one act.
* * * * * *
 "MR. NELSON: Now that he's preaching he couldn't have possibly done this. That's the inference to make, blasphemy.
"MR. MATHIS: Objection, Your Honor.
"THE COURT: Overruled.
* * * * * *
 "MR. NELSON: Well, he is responsible for his past. Nobody else. His mother isn't, nobody in this courtroom is, his lawyer isn't, he is.
 "MR. MATHIS: Your Honor, I would object to this argument. He's not on trial for his past. And I think it's improper.
"THE COURT: Overruled.
* * * * * *
 "MR. NELSON: And I have no idea how much each day is taken from stores and nobody is charged.
 "MR. MATHIS: Your Honor, I'm going to object. That is an extremely prejudicial argument. It's not proper.
"THE COURT: Overruled."
(R. 226-227)
"To constitute reversible error, the statement of counsel in argument must be made as a fact which is unsupported by any evidence, and the argument must be pertinent to the issues at trial or its natural tendency must be to influence the finding of the jury." Sanders v. State, 426 So.2d 497
(Ala.Crim.App. 1982); Manigan v. State, 402 So.2d 1063
(Ala.Crim.App.), writ denied, 402 So.2d 1072 (Ala. 1981).
"Counsel for both the defendant and the State are allowed wide latitude on drawing reasonable inferences in their closing arguments." Sanders, supra; See Varner v.State, 418 So.2d 961 (Ala.Crim.App. 1982). "It is clear that a district attorney in closing argument may make a general appeal for law enforcement." Diamond v. State,363 So.2d 109 (Ala.Crim.App. 1978); Barnett v. State,52 Ala. App. 260, 291 So.2d 353 (1974); Varner, supra;Sanders, supra.
The first, third and fourth remarks may be considered as appeals to law enforcement and comments on the evils of the crime charged. Diamond, supra. The trial judge was in the best position to determine the propriety of these comments. Under these circumstances we are unwilling to find that he abused his discretion in overruling these objections.Diamond, supra, and cases cited therein; SeeVarner, supra; Sanders, supra.
While the second remark made by the prosecutor may, in some circumstances, have been "improper",[1] we do not believe *Page 1149 
the trial judge committed reversible error in overruling this objection. See Stokes v. State, 462 So.2d 964
(Ala.Crim.App. 1984) (prosecutor's comment in closing argument that jurors were ones who paid the price when people like defendant shoplifted did not warrant reversal where conviction was proper).
"It is not every improper remark to which objection is not sustained which will require a reversal." Varner, supra p. 963. "Statements of counsel in argument to the jury must be viewed as in the heat of debate, and such statements are usually valued by the jury at their true worth and are not expected to become factors in the formation of the verdict."Sanders, supra at 509.
 IV
The appellant contends that both of the pre-trial photo line-ups were impermissibly suggestive and, therefore, rendered inadmissible the in-court identifications of this appellant by Robert Harris and Martha Covington.
Appellant argues that the "first" photo spread (viewed by Mr. Harris on May 6, 1985), was impermissibly suggestive because the appellant's photo included therein was the only one in which the subject was wearing a full beard. Appellant argues that the "second" photo spread (viewed by Ms. Covington on May 13, 1985), was impermissibly suggestive since the appellant's photo was the only one in which the subject was wearing a white shirt, tie and sweater.
 "A pretrial line-up is impermissibly suggestive if, under the totality of the circumstances, the procedure challenged created a 'substantial likelihood' of misidentification:
 " '[F]actors to be considered in evaluating the likelihood of misidentification include the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the time of the confrontation, and the length of time between the crime and the confrontation.' Neil v. Biggers, 409 U.S. 188, 199-200, 93 S.Ct. 375, 382-383, 34 L.Ed.2d 401 (1972)."
Jones v. Smith, 772 F.2d 668, 671 (11th Cir. 1985), cert. denied, 474 U.S. 1073, 106 S.Ct. 838, 88 L.Ed.2d 809
(1986). See Miller v. State, 431 So.2d 586
(Ala.Crim.App. 1983); Jones v. State, 450 So.2d 165
(Ala.Crim.App. 1983), aff'd, Ex Parte Jones, 450 So.2d 171 (Ala. 1984), cert. denied, 469 U.S. 873, 105 S.Ct. 232,83 L.Ed.2d 160 (1984); Proctor v. State, 424 So.2d 705
(Ala.Crim.App. 1982); Williamson v. State 384 So.2d 1224
(Ala.Crim.App. 1980).
"Reliability is the linchpin in determining the admissibility of identification testimony." Proctor, supra at 708;Williamson, supra at 1229.
The trial court below heard testimony on voir dire, outside the presence of the jury, concerning all aspects of the photo line-ups and concluded that the procedures followed were not impermissibly suggestive. After carefully reviewing the testimony and both sets of photos we must agree with the trial court.
"On the whole, the physical appearance of the defendant is not so dissimilar to that of the other lineup participants that it renders the lineup unduly suggestive." Jones v.State, supra at 170. In the "first" photo spread, it is true that appellant is the only subject who appears with a full beard or "goatee". We must note, however, that two other subjects in the photo spread have at least some facial hair in the chin area and all six were wearing mustaches.[2] *Page 1150 
Even if we had found either of the pre-trial identification procedures to be suggestive, we do not believe this would warrant the exclusion of the in-court identifications.
The in-court identifications were based on eyewitness observations of the perpetrator of the theft. Indeed, Mr. Harris had watched the thief "for a while" and had even come so close to him as to have been hit by him. (R. 35). Ms. Covington, as the store security guard, watched the suspect for ten to twelve minutes. "Both of these identifications were therefore reliable and independent of the pre-trial identification procedures." Miller, supra at 590. See also Carpenter v. State, 380 So.2d 368
(Ala.Crim.App. 1980).
Furthermore, both witnesses were able to give accurate descriptions of the thief prior to the pre-trial photo line-ups and there was no evidence that either witness was prompted or that attention was purposefully focused on the appellant.Williamson, supra.
 V
The appellant contends that the State's action in failing to provide a list of people who were shown the photographic spread but could not make an identification resulted in reversible error, especially in light of his Motion For Production (R. 276-277). We disagree.
"[T]he accused in a criminal case has no inherent right to the inspection or disclosure of evidence in the possession of the prosecution." C. Gamble, McElroy's AlabamaEvidence, § 290.05(1) (3rd ed. 1977); See Killoughv. State, 438 So.2d 311 (Ala.Crim.App. 1982), rev'd on other grounds, 438 So.2d 333 (Ala. 1983), on remand438 So.2d 336 (Ala.Crim.App.), and cases cited therein.
"Whether to grant or deny an accused the right to inspect evidence in the possession of the prosecution lies within the discretion of the trial court." Gamble, supra, and cases cited therein; See Todd v. State, 472 So.2d 707
(1985).
"If the accused has any hope of putting a trial court in error for refusing to permit discovery of evidence in the hands of the prosecution, he must . . . have made a showing that it is in the possession of the prosecution." Gamble, supra, and cases cited therein. See United States v.Walker, 720 F.2d 1527 (11th Cir. 1983), cert. denied,Gustin v. United States, 465 U.S. 1108,104 S.Ct. 1614, 80 L.Ed.2d 143 (1984) ("Brady does require that the information requested be known to the prosecution."Walker, supra, p. 1535). Perry v. State,371 So.2d 969 (Ala.Crim.App.), writ denied, Ex PartePerry, 371 So.2d 971 (Ala. 1979).
The appellant has made no showing that theprosecution[3] was "in possession" of a list or knew of the identities of any persons who had been shown the photos and were unable to make an identification.
Furthermore, even if the appellant had made such a showing and had proven that the prosecution had actually suppressed this evidence, we do not believe the evidence was sufficiently material so as to require a new trial under theBrady doctrine.
"[T]he standard of materiality is whether the suppressed evidence might have affected the outcome of the trial."United States v. Walker, supra p. 1535 (citingUnited States v. Agurs, 427 U.S. 97, 104106,96 S.Ct. 2392, 2397-2399, 49 L.Ed.2d 342 (1976).
In this case, the appellant was allowed extensive cross-examination of the officer who was responsible for the photo identification procedures as well as one of the witnesses who identified the appellant. He was thus given ample opportunity to elicit the relevant testimony from the witnesses who were present at trial. Indeed, Ms. *Page 1151 
Covington testified on cross-examination that she had viewed two photo spreads and had been unable to identify the appellant the first time. (R. 126-130). No error is shown.
 VI
Appellant contends that the evidence presented by the State was insufficient to support the jury's verdict. He bases his argument on his earlier assertion that the out-of-court and in-court identifications of the appellant should have been suppressed.
In light of our decision as to the admission of the identification procedures discussed in Part IV of this opinion, we conclude that the jury could have reasonably found "that the evidence excluded every reasonable hypothesis except that of guilt." Cumbo v. State, 368 So.2d 871 (Ala.Cr.App. 1978), writ denied, 368 So.2d 877 (Ala. 1979).
For the reasons above, this cause is due to be and is, hereby, affirmed.
AFFIRMED.
All the Judges concur.
[1] The appellant cites McGhee v. State, 41 Ala. App. 669, 149 So.2d 1 (1962) aff'd, 274 Ala. 373, 149 So.2d 5
(1963) in support of his contention regarding the second remark. The statement made in that case is clearly distinguishable from the one in the instant case. There the admittance of the statement " 'I know this man of God told you the truth, he is on God's side, gentlemen, and God is on his,' " was held to be reversible error. That court characterized the statement as reflecting counsel's "personal knowledge as to the truthfulness or untruthfulness of the testimony of a witness."McGhee, supra p. 671, 149 So.2d 1. The statement in this case simply does not constitute such a blatantstatement of counsel's own opinion or knowledge; neither is it an "assertion of a fact not in evidence. . . ."Diamond, supra p. 114. This statement is "arguably within the wide latitude allowed a prosecutor in drawing inferences from the evidence." Varner, supra p. 963.Barnett, supra.
[2] The trial judge noted, and we agree, that the fact that Harris was able to pick the appellant's photo out of the first photo line-up (in which the appellant was shown with a beard), tends to support the credibility of the witness' in-court identification in the absence of testimony indicating that the witness had been told that the appellant had a full beard or goatee, since the witness had, in fact, testified that the man who hit him was clean shaven at the time. (R. 84, 93, 95). See Miller, supra.
[3] The appellant apparently bases his argument on Officer Tucker's testimony wherein he indicated that he "might have" shown the photo spreads to other witnesses, but did not know and, wherein he acknowledged that other witnesses were present during the arrest. (R. 184185). This testimony does not even show whether or not other witnesses ever viewed the photo spreads much less whether or not the prosecution was aware of them or the results.