**Arthur Lee JONES,
Petitioner-Appellant,**

v.

**Fred SMITH, Commissioner, Alabama Department of Corrections and Willie Johnson, Warden, Holman Unit, Respondents-Appellees.**

No. 84–7783.

United States Court of Appeals,
Eleventh Circuit.

Sept. 11, 1985.

John Furman, Mobile, Ala., for petitioner-appellant.

Charles A. Graddick, Atty. Gen., Ed Carnes, Martha Gail Ingram, Asst. Attys. Gen., Montgomery, Ala., for respondents-appellees.

Before RONEY, FAY and JOHNSON, Circuit Judges.

JOHNSON, Circuit Judge:

Petitioner-appellant, Arthur Jones, was convicted of murder and sentenced to death in 1982. Direct appeals in state court proved unsuccessful. *See Jones v. State,* 450 So.2d 165 (Ala.Crim.App.1983), *aff'd, In re Jones,* 450 So.2d 171 (Ala.), *cert. denied,* —— U.S. ——, 105 S.Ct. 232, 83 L.Ed.2d 160 (1984). Subsequent efforts to obtain *coram nobis* relief in state court also failed. Jones then filed the present action in federal district court, seeking habeas corpus relief. In this appeal, we review the district court's denial of Jones' habeas petition. Three issues are presented: (1) whether the pretrial line-up was unduly suggestive; (2) whether the trial court erred in rejecting Jones' requested instruction on eyewitness testimony, and (3) whether Jones received effective assistance of counsel during the trial proceedings.

The district court below did not hold an evidentiary hearing; it considered only the records made at trial and at the state *coram nobis* hearing. 599 F.Supp. 1292. The district court examined the record to determine whether the state court's findings of fact were erroneous. These findings are entitled to a presumption of correctness unless they are "not fairly supported by the record." *See* 28 U.S.C.A. § 2254(d)(8); *Sumner v. Mata,* 449 U.S. 539, 101 S.Ct. 764, 66 L.Ed.2d 722 (1981). Having reviewed the record on appeal, we agree with the district court that the state court's findings are fairly supported by the record. We also agree with the district court's disposition of the legal issues presented in this appeal. Accordingly, we affirm.

## I. FACTS

The murder victim was a taxi driver Jones hired at 12:45 a.m. on the morning of August 17, 1981. Immediately after the taxi left the taxi stand, a dispatcher attempted to call the driver on a radio. The driver failed to respond. Approximately thirty-five minutes later, the driver was found robbed and shot to death, lying in the street beside his car eight-tenths of a mile from Jones' home in Plateau, a residential area in North Mobile, Alabama. The radio in the taxi was in working condition when found.

A witness named "Shorty" Banks saw Jones hire the taxi and described him to the police shortly after the murder had been discovered. Banks recalled Jones as having said that he wanted a ride to Plateau. Banks reviewed several photographic arrays but did not point to anyone as the suspect. A picture of Jones was not included among the photographs. At a line-up shortly after Jones' arrest and within three weeks of the murder, Banks immediately recognized Jones as the man he saw at the taxi stand. Banks is five feet four inches tall. He was sitting on the hood of an automobile when he saw Jones at the taxi stand. He described Jones to police as being 5′5″ or 5′6″—slightly taller than Banks—but in fact Jones is five feet three inches tall, one inch *shorter* than Banks. Jones was the shortest person in the line-up.

Jones was represented at trial by two attorneys, both of whom have practiced as criminal defense lawyers for over twenty years. The first attorney appointed asked to be replaced because of disagreements with Jones over how to present his defense. The trial court did not replace this attorney but instead appointed a second attorney to assist. The state *coram nobis* court found that Jones had no problems with either attorney from then on.

Jones' primary defense tactic was to attack Banks' identification of him as the last one to ride with the slain taxi driver. At Jones' insistence, however, an alibi defense was also proffered. Two alibi witnesses testified that they saw Jones at a particular social club on the night of the murder. Jones now claims that seven other witnesses should have been located and subpoenaed to testify to the same effect. The state *coram nobis* court found that Jones did not give the names of three of these additional witnesses to his attorneys before trial. The other four witnesses either were not located or refused to appear and testify. The state court found that Jones' at-

torneys made every reasonable effort to find these four potential witnesses, and the district court below adopted this finding as correct.

One of the potential witnesses, Bobby Vaughn, heard before the trial that Jones' attorneys were looking for him. Vaughn called the attorneys and verified Jones' claim that on the night of the murder he and Jones were arranging a marijuana sale, but he refused to give the attorneys his address and failed to appear and testify at trial as he had promised. Despite last minute attempts, Vaughn was never served with a subpoena. Jones' attorneys did not move for a continuance and did not ask that funds be provided to hire a private investigator to locate Vaughn or the other witnesses.

Vaughn is now dead. None of the remaining alibi witnesses have been found. Thus, not one of the seven testified at the state *coram nobis* hearing that he or she would have appeared at trial and confirmed Jones' alibi defense if requested.

## II. ISSUES AND DISCUSSION

### A. The Pretrial Line-up.

Jones claims that, because Banks had previously described him as short and since he was, in fact, the shortest participant in the pretrial line-up, the line-up was impermissibly suggestive and tainted Banks' subsequent in-court identification of Jones as the last one to ride with the murdered taxi driver. Jones seeks to bolster this claim by citing the discrepancy between his actual height and the estimate of his height Banks gave the police before his arrest.[1]

■ A pretrial line-up is impermissibly suggestive if, under the totality of the circumstances, the procedure challenged created a "substantial likelihood" of misidentification:

> [F]actors to be considered in evaluating the likelihood of misidentification include the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the time of the confrontation, and the length of time between the crime and the confrontation.

*Neil v. Biggers,* 409 U.S. 188, 199–200, 93 S.Ct. 375, 382–383, 34 L.Ed.2d 401 (1972). Jones emphasizes the first three of these factors, arguing that: (1) Banks observed Jones for only five minutes as Jones arranged to hire the taxi, (2) Banks was not attentive since he did not then know that the driver would be murdered, and (3) Banks' estimate of Jones' height was inaccurate by two or three inches.

■ Like the state courts and the district court below, however, we hold that the line-up, if suggestive at all, was not impermissibly suggestive. The five-minute period of observation passed under good lighting conditions. During this period, Banks' attention was specifically directed towards Jones when Jones asked Banks if he were the taxi driver. The line-up occurred only three weeks later, at which time Banks immediately and unequivocally identified Jones. In fact, this identification was so positive that at trial Banks could remember very little about the other individuals who participated in the line-up. This evidence of Banks' certainty is even more compelling when it is recalled that he had previously rejected without hesitation several photographic arrays not containing Jones'

---

[1] Jones also asserts that Banks' testimony at trial was equivocal on the issue whether the police had told him, prior to the line-up, that the murderer would be in the line-up for him to identify. As the district court below noted, however, the trial judge specifically questioned Banks for clarification on this point. The district court expressly found that the police had not told Banks the murderer would be in the line-up, and the record clearly supports this finding. Jones' argument in this appeal that Banks' initial equivocation "clearly indicate[s] suggestivity and severe likelihood of misidentification" is without merit.

Also without merit is the claim that Banks altered his description of Jones after the pretrial line-up to agree with Jones' actual appearance as opposed to a composite drawing previously made with Banks' assistance. The state court found a "marked resemblance" between the composite drawing and Jones. The record fairly supports this finding.

picture. The remaining core of Jones' claim—that five minutes was too short a period of observation and three inches too great a discrepancy in height estimation—does not, under a "totality of the circumstances" create a "substantial likelihood" of misidentification. The line-up was not unduly suggestive and did not taint Banks' in-court identification of Jones.

### B. The Instruction on Eyewitness Identification.

Jones next claims that the trial court committed an error of constitutional magnitude when it refused, without explanation, to give the following jury charge:

> The court charges the jury that the possibility of human error or mistake, and the probable likeness or similarity of objects and persons are elements that you must act upon in considering testimony as to identity. You must carefully consider these factors passing upon the credibility that you attach to the witness' testimony, and you must be satisfied beyond a reasonable doubt as to the accuracy of the witness' identification of the Defendant.

This requested instruction is an extremely truncated version of the "Telfaire" charge, which derives its name from a model charge recommended by the District of Columbia Circuit Court of Appeals in *United States v. Telfaire*, 469 F.2d 552, 558–59 (D.C.Cir.1972). The court in *Telfaire* did not make its proposed charge mandatory. In fact, it affirmed the defendant's conviction because the trial court's instructions— "both the initial instruction on the burden of proving beyond a reasonable doubt all the elements of the offense, and the follow-on instructions dealing with the defense of alibi, and the problem of mistaken identity" —when considered in "the overall context of the case," significantly focused the jury's attention on the issue of identity. *Id.* at 556.

This Court has yet to decide whether a "Telfaire" charge should be constitutionally required in every case where identification of the defendant is a major issue at trial. Instead, in the few similar cases we have decided thus far, we have held that the more general instructions actually given fairly covered the essence of the identification issue. Most recently, in *United States v. Martinez*, 763 F.2d 1297 (11th Cir.1985), we affirmed a district court's refusal to give a requested "Telfaire" instruction because the portions of the charge actually given concerning reasonable doubt and the credibility of witnesses adequately covered the identification issue. In *Martinez*, the district court had not mentioned identification testimony specifically,[2] but it had instructed the jury to "[c]onsider the witness' ability to observe" the events to which he had testified and to evaluate "whether he impresses you as having an accurate recollection" of these events. *Id.* at 1304 n. 7.

Here, the trial court did not expressly instruct the jurors to consider "Shorty" Banks' ability to observe or his accuracy in recalling who had last hired the taxi on the morning of the murder. But the court did fully instruct the jurors on the requirement that they find every element of the crime beyond a reasonable doubt before returning a guilty verdict. Moreover, as did

---

**2.** The issue of identification *was* specifically mentioned by the state trial court in a criminal case later brought before this Court in *Rodriguez v. Wainwright*, 740 F.2d 884 (11th Cir. 1984), as an appeal from a district court's denial of federal habeas corpus relief. Appellee in the present action, the State of Alabama, has provided us with a copy of a portion of the State of Florida's brief in *Rodriguez*, which sets forth the relevant part of the state trial court's jury charge in that case:

> Now, the burden of proof on the State extends to every element of the crime charged and

> this [sic] include the burden of proving beyond a reasonable doubt the identity of the defendant as the perpetrator of the crimes with which he stands charged. If, after examining all the evidence, you have a reasonable doubt, as I will define it, to identification, you should find the defendant not guilty.

Apparently relying on this part of the trial court's instruction, this Court summarily affirmed the district court's denial of habeas relief, holding that the given instruction had already covered the defendant's requested "Telfaire" instruction. *Id.* at 885.

the defendant in *Telfaire,* Jones proffered an alibi defense. The trial court's instruction on this defense focused precisely on the issue of whether it was in fact Jones, or someone else, whom Banks had seen at the taxi stand.[3] The instructions given in *Telfaire* are nearly identical.[4] Without endorsing or rejecting the model charge proposed by the District of Columbia Circuit Court of Appeals, we find the disposition of that case persuasive, particularly in light of the fact that at trial the accuracy of Banks' identification of Jones was a major focus of his testimony and cross-examination. In sum, we hold that the charge given to the jury, when taken as a whole and considered along with the manner in which the case was tried, clearly conveyed to the jury the State's burden of proving beyond all reasonable doubt that the defendant, and not someone else, committed the crime charged.

### C. The Ineffective Assistance Claims.

Jones cites an array of alleged shortcomings in the representation his attorneys provided at trial: (1) his first appointed attorney asked to be relieved but was forced to continue representing him, (2) together, his attorneys made no motion for funds to hire an investigator to locate alibi witnesses, and the investigation the attorneys carried out on their own was inadequate, (3) the attorneys failed to request a continuance when Bobby Vaughn did not appear to testify at trial as he had promised, (4) they waived Jones' right to make an opening statement instead of using it as an opportunity to point out the unreliability of eyewitness testimony even before Banks was called to testify, (5) the attorneys did not arrange for an expert to testify as to the unreliability of eyewitness testimony, and (6) they did not request that opening and closing arguments of counsel be recorded, and thus there is no way appellate counsel can examine the transcript in search of plain error.

Applying the two-part test announced in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), we affirm the district court's denial of habeas relief as to each of these alleged shortcomings. None involved both professional conduct that was unreasonable under the circumstances (the performance inquiry) and a reasonable probability that, but for the challenged conduct, the result of the trial proceedings would have been different (the prejudice inquiry). *Id.* at ——, 104 S.Ct. at 2064–69.

■ The state court found that a good working relationship existed between Jones

---

**3.** The trial court instructed:

The defendant in this case relies upon what we call an alibi defense. That is that he was not where and when of necessity he must have been in order to have committed the crimes with which he is charged. Now the law is that the burden does not shift to the defendant by reason of this defense. The burden is and continuously remains with the State to prove the guilt of the defendant beyond a reasonable doubt.

Your verdict must be based upon the evidence, as I have told you, which is the testimony and the exhibits and the just and the reasonable inferences from that evidence. It may not be based upon speculation or conjecture. ...

I charge you, members of the jury, that the defendant has introduced evidence that he was not present at the time and the place the alleged crime was committed. This is known in law as the defense of alibi. Alibi is a legal and proper defense and if after weighing the evidence in support of the alibi with all of the facts and circumstances in the case the jury has a reasonable doubt that the prosecution has proven that the defendant was present at the time and place that the alleged crime was committed it should find the defendant not guilty.

**4.** The district court in *Telfaire* instructed:

In this case the defendant has taken the stand and testified in his own defense with respect to what occurred on April 10, 1970. ... His defense is in the nature of an alibi and I wish to give you the following instruction of law with respect to an alibi. ...

If, after full and fair consideration of all of the facts and circumstances in evidence you find that the government has failed to prove beyond a reasonable doubt that the defendant was present at the time when, and the place where, the offense charged was allegedly committed, you must find the defendant not guilty.

*United States v. Telfaire, supra,* 469 F.2d at 556 n. 13.

and both of his attorneys after a second lawyer was appointed to act as co-counsel. This finding is fairly supported by the record. It belies any specific claim Jones might make as to having been prejudiced by his first attorney's alleged reluctance to represent him.

■ The state court also found that the attorneys conducted a thorough investigation of the case, including a diligent search for the alibi witnesses whose names had been given to them. Jones' attorneys interviewed several people who frequented the social club where Jones claims to have been on the night of the murder. Yet they were unable to locate the alibi witnesses. The state court's characterization of this investigation as adequate is more than fairly supported by the record. Moreover, apart from the reasonableness of his attorneys' investigation, Jones has not established that he was prejudiced by their failing to locate the witnesses or move for investigative funds. He has not shown that he was entitled to have such a motion granted, that a private investigator would have located the witnesses, and that they would have testified even if located. It is even less evident that their testimony would have created a reasonable probability that the outcome of Jones' trial would have been different. Not one of these witnesses appeared before the state *coram nobis* court to testify as to what he or she would have said if called as a witness at Jones' trial.

■ Similarly, to the extent the record reflects what Bobby Vaughn would have said if called as a witness in Jones' behalf, no reasonable probability exists that the outcome of the trial would have been altered by his testimony. Vaughn's attorney summarized his client's testimony as confirming that Vaughn had been with Jones on the night before the murder but not at the precise time the murder occurred.

■ The attorneys' decision to waive opening argument at the guilty phase was one of reasonable trial strategy. It left the defense uncommitted to a particular position and thus free to develop any defense that might materialize as the State presented its case. Further, Jones has not established as a reasonable probability that making an opening statement addressing the unreliability of eyewitness testimony would have altered the outcome of the trial in this case.

■ Nor did the failure of Jones' attorneys to offer in evidence the opinion of a qualified expert as to the unreliability of eyewitness testimony constitute ineffective assistance of counsel. The likelihood of mistaken identification by Banks was brought to the jury's full attention through cross-examination. No prejudice resulted from the lack of expert testimony.

■ Finally, the attorneys' failure to request that opening and closing arguments be recorded did not comprise unreasonable professional conduct. The attorneys did object to two remarks made by the state, and the statements of counsel and the court with respect to these objections were recorded. Jones does not allege and has presented no evidence showing that other allegedly improper remarks were made before the jury without objection. At best, his claim is that additional though unspecified grounds for post-conviction relief might have been discovered had the arguments been recorded.

AFFIRMED.