IN THE COURT OF CRIMINAL APPEALS


OF TEXAS






NO. WR-65,324-01






EX PARTE RAYMUNDO HUERTA, Applicant






ON APPLICATION FOR A WRIT OF HABEAS CORPUS


FROM CAUSE NO. 02-02065-W IN THE 363
rd DISTRICT COURT


DALLAS COUNTY





Per Curiam


ORDER


 

 Pursuant to the provisions of Article 11.07 of the Texas Code of Criminal Procedure,
the clerk of the trial court transmitted to this Court this application for a writ of habeas corpus. 
Ex parte Young, 418 S.W.2d 824, 826 (Tex. Crim. App. 1967). Applicant was convicted of
murder and sentenced to ninety-nine years' imprisonment. The Fifth Court of Appeals
affirmed his conviction. Huerta v. State, No. 05-03-00585-CR (Tex. App.-Dallas, March 16,
2004, pet. ref'd). 

 Applicant contends that his trial counsel rendered ineffective assistance of counsel by
failing to consult with an expert on eyewitness identification and failing to object to hearsay
testimony. The trial court entered findings of fact and recommended that this Court grant
relief. However, we deny relief on this application for a writ of habeas corpus because
applicant has failed to prove, by a preponderance of evidence, that his attorney provided
constitutionally ineffective assistance of counsel under Strickland v. Washington, 466 U.S.
668 (1984). Applicant asserts, and the trial court agreed, that his trial counsel's performance
was deficient in two ways:

 (1) Counsel failed to "consult" an expert to "explain the foibles" of eyewitness
identifications; and 


 (2) Counsel failed to object sufficiently to multiple instances of hearsay testimony 
offered by the State.


We cannot condemn counsel's representation in either of these respects.

 We review the facts in the light most favorable to the trial judge's findings. Cook v.
State, 940 S.W.2d 623, 627 (Tex. Crim. App. 1996) (noting that "while we are not bound by
the findings of the habeas court, we generally accept them, absent an abuse of discretion"). We
also grant deference to "implicit factual findings" that support the trial court's ultimate
recommendation, but "[we] cannot do so if [we] are unable to determine from the record what
the trial court's implied factual findings are." Ex parte Peterson, 117 S.W.3d 804, 819 (Tex.
Crim. App. 2003). But even granting great deference to the trial court's factual findings, we
cannot agree that applicant has proven his right to relief. Ex parte Kimes, 872 S.W.2d 700,
703 (Tex. Crim. App. 1993).

 In considering an ineffective assistance claim, we indulge a strong presumption that
counsel's actions fell within the wide range of reasonable professional behavior and were
motivated by sound trial strategy. See Strickland, 466 U.S. at 689; Thompson v. State, 9
S.W.3d 808, 813-14 (Tex. Crim. App. 1999); Jackson v. State, 877 S.W.2d 768, 771 (Tex. Crim.
App. 1994). To overcome this presumption, a claim of ineffective assistance must be firmly
demonstrated in the record. Thompson, 9 S.W.3d at 813.

A. The Failure to Consult an Expert on Eyewitness Identification.

 At the habeas evidentiary hearing, applicant offered the testimony of Dr. Roy Malpass,
a social psychologist, who has been researching eyewitness identification issues since 1969. 
He said that he found it "interesting" that the State's sole eyewitness made only a tentative
identification of applicant in a photo line-up a few weeks after the event, but made a positive
identification in a photo line-up over seven years later. "This is unusual because memory very
rarely improves with the passage of time, certainly with the passage of such a substantial
amount of time." Dr. Malpass stated that the trial record in this case was too "incomplete" to
determine exactly whether the witness's identification was infected by suggestive feedback or
improper enhancement of memory, but that the record implied it was. 

 Dr. Malpass testified that, had he been retained before this trial, he would have
suggested a number of possible areas of questioning: how the photographic line-ups were
conducted, the training of the law-enforcement personnel involved, any policy and procedural
manuals that they may have followed, and so forth. Dr. Malpass opined that jurors "do not
understand the impact of many procedural matters in witness identification" and that he could
have "educate[d] the attorney as to what areas needed to be developed in this case to properly
challenge the witness identification procedures[.]" 

 On cross-examination, Dr. Malpass agreed that jurors are capable of understanding that
memory diminishes over time. He also admitted that, because the trial record was
undeveloped, he could not say what the result of his consultation might have been had he been
consulted.

 Applicant's retained trial attorney then testified that he knew, before trial, that he would
spend a lot of time questioning the State's single eyewitness. He had read literature on
eyewitness identification and had opportunities to work with experts. He was familiar with the
pertinent Supreme Court cases on eyewitness identification and such identification factors as
the "opportunity to observe, adequate view, accuracy of description, degree of attention, lack
of emotional state, prior misidentification, level of certainty, [and] elapsed time."

 The trial attorney stated that he had recently hired an expert witness to present this
information to a jury, but "the impression I got was that it backfired. My client was convicted.
. . . Afterwards I polled the jury, and they said that they were absolutely insulted, which I
couldn't believe. I thought the expert did a great job. . . . So after that experience, I'm much
less inclined to hire an expert to say these sort of things to a jury. . . ." (1) 

 Applicant's trial attorney testified that he did not attempt to suppress the eyewitness
identification in this particular case because the witness had made only a tentative
identification at the time, and the attorney was not informed, before trial, that there had been
a more recent and more positive photo identification. At the time of the pretrial hearings, the
attorney felt he had no reason to question the legal validity of the witness's identification, and
thus no reason to file a motion to suppress that identification. Further, from the police reports
that had been given to him, he knew that there were other eyewitnesses who had identified his
client, although these witnesses ultimately did not testify at trial. (2) Nonetheless, at trial the
attorney did focus upon the theory that the witness's in-court identification had been tainted
by interviews with the prosecution and police. He said that he vigorously cross-examined the
witnesses. He did not think that it would necessarily be helpful to attack the witness's
eyewitness identification by sponsoring an expert to discuss suggestibility and the fallibility
of memory. 

 Applicant's trial attorney expressed valid reasons for not spending money on an
eyewitness identification expert to assist him in this case. There is nothing in the record that
indicates that Dr. Malpass knew significantly more about the fallibility of eyewitness
testimony than the experienced defense counsel already knew. The value of Dr. Malpass as a
consulting expert might well have been minimal, but the cost exorbitant. Nor is there any
indication that a jury would necessarily be impressed with such expert testimony, especially
since there was evidence in the record that trial counsel's previous experience had shown
otherwise. There is no indication that applicant himself wished to pay for such an expert, or
that, at the time of trial, he thought that this was a useful and essential investment of his funds. 


 Although an eyewitness identification expert might assist an attorney in developing a
cross-examination methodology or might provide helpful expert testimony in a particular case,
it is not the law that every defense counsel must-upon pain of being found constitutionally
incompetent-hire such an expert in a one-witness identification case. Even in a case with an
initial "tentative" identification, cross-examination of the witness may well be a
constitutionally sufficient strategy. Lawyers may be competent enough to educate themselves
about the factors that affect the accuracy and reliability of eyewitness identification even
without consulting or sponsoring an expert in this area. The record shows that applicant's trial
attorney had, in a previous case, consulted with and sponsored an expert on eyewitness
identification, so there is nothing to suggest that he was poorly informed on this topic.

 An attorney's strategic choices concerning whether to retain or request appointment
of an expert on eyewitness identification, made after a thorough investigation of relevant facts
and law, are virtually unchallengeable. Cantu v. Collins, 967 F.2d 1006, 1016 (5th Cir. 1992)
(trial counsel in capital murder prosecution was not ineffective for failing to seek appointment
of expert on eyewitness identification "based on his belief that his cross-examination of [the
eyewitness] would be sufficient to refute the accuracy of the identification"); Ford v.
Cockrell, 315 F. Supp. 2d 831, 848, 853 (W.D. Tex. 2004) (trial counsel's strategic decision
not to press repeatedly for his request for appointment of Dr. Malpass as an expert in
eyewitness identification was not deficient performance, especially when there was no
guarantee that trial court would have admitted such evidence).

 Applicant relies upon a single, unpublished California court of appeals decision, People
v. Kindle, B151449, 2002 Cal App. Unpub. LEXIS 6453 (Cal. Ct. App. July 16, 2002), for the
proposition that the failure to retain an expert on eyewitness identification might, under certain
circumstances, constitute ineffective assistance of counsel. In that case, however, the record
was silent as to why counsel failed to obtain such services. Id. at *40. Here the record is not
silent. Applicant's trial attorney expressed valid strategic reasons for not retaining such an
expert. Notably, the California court of appeals distinguished the State's two published federal
opinions, Jones v. Smith, 772 F.2d 668 (11th Cir. 1985), (3) and Switzer v. Hannigan, 45 F.
Supp. 2d 873 (D. Kan. 1999), which had held that it was not ineffective assistance of counsel
for defense counsel to fail to call an eyewitness identification expert at trial. Each of those
cases, like this one, involved a single eyewitness identifying a stranger. The California court
suggested that especially "complex psychological factors at work in this case" led to its
contrary decision. Kindle, 2002 Cal App. Unpub. LEXIS 6453 at *40 n.27. We find the
published federal cases more persuasive. Thus, we cannot agree that applicant has established,
by a preponderance of the evidence, that his trial attorney provided constitutionally defective
assistance of counsel by failing to hire an expert on eyewitness identification. 

B. The Failure to Object Sufficiently to Hearsay Statements.

 Applicant's second complaint is that his counsel failed to object sufficiently to various
hearsay statements. Counsel did make numerous objections to the various witnesses's
purported hearsay statements, although he did not object contemporaneously to each one. At
one point, after the jury had been retired, counsel complained to the judge that he was trying
to object to multiple questions eliciting hearsay statements, but that he could not "stem the
flow" of the State's questions. 

 When asked why he did not make a "running objection" to all hearsay statements, trial
counsel responded,

 then it would be putting the burden on the Judge to make a decision every time
she heard hearsay. That already wasn't happening. Even-even my valid hearsay
objections were being overruled, and I felt during this trial it was more effective
to interrupt [the witness] and keep him sort of on a short leash than to-I felt it
was just too dangerous to ask for a running objection and let-I mean, he got so
much in anyway by my being overruled, that to just kind of lay back and let the
train plow us down didn't seem like a good idea during-during this trial.

 . . .

 [Running objections] are for more static objects or, you know, I object to the
testimony of a certain person. I want a running objection for the State's expert. 
I object to all of his testimony. That way I'm not objecting after every sentence,
but in this case every single witness, with the exception of [the eyewitness] was
just the State trying to elicit testimony. And when I'd jump up and object, they'd
try to get it in in a different way and eventually the Judge, you know, well, that
sounds pretty good, let's go ahead and hear that.


 Counsel stated that he was constantly trying to fight against the State's use of hearsay
but, despite his numerous objections, was unsuccessful much of the time. He would approach
the bench and would be "[j]ust screaming" about the hearsay the State was offering. (4) Counsel
also stated that he was familiar with the concept of "back-door" hearsay and that many of the
questions asked by the State were an attempt to elicit "back-door" hearsay. (5) He objected to
this technique, but to no avail. In sum, counsel thought that making individual objections to
individual instances of hearsay was a better strategy in this case than requesting a single
running objection to "hearsay" and leaving it up to the judge to decide what was and was not
hearsay. He agreed that he "did the best [he] could and made decisions based on what [he]
believe[d] was good trial strategy."

 Once again, counsel's strategy appears to be a sound one. Running objections would
apply to the entirety of a witness's testimony or the entirety of a specific topic; they are not
appropriate when each individual question may or may not call for a hearsay response. See
generally, Sattiewhite v. State, 786 S.W.2d 271, 283 n.4. (Tex. Crim. App. 1989). This is
especially true when a party is attempting to offer more subtle, "back-door" hearsay. 

 In this case, applicant's trial attorney made numerous objections, some of which were
sustained, many of which were overruled. His conduct is not constitutionally deficient because
the trial judge may have inappropriately overruled some of his objections and he would
ultimately accede to those purportedly incorrect rulings.

 Applicant also alleges that his trial attorney failed to object to certain purported
instances of hearsay based on the right of confrontation and the reasoning set out in Crawford
v. Washington, 541 U.S. 36 (2004). Crawford was not decided until a full year after
applicant's trial. His trial counsel was not required to be clairvoyant and predict what the
future law might become long after applicant's trial was over. As a matter of law, counsel
cannot be held constitutionally deficient for failing to predict future law. Ex parte Chandler,
182 S.W.3d 350, 358-59 (Tex. Crim. App. 2005) (stating that a finding of ineffective
assistance cannot be predicated upon the failure to predict future law; "a bar card does not
come with a crystal ball attached").

 For these reasons, we disagree with the trial court's conclusion that applicant's trial
counsel rendered constitutionally deficient assistance to his client in this case, and we deny
relief. 

Filed: November 21, 2007

Do Not Publish
1. In response to habeas counsel's explicit question, "And do you think that an expert such as
Dr. Malpass-would have been helpful in helping you more fully develop the lineup procedures in
questioning the police officers?" trial counsel answered, "Not in my personal experience." 
2. This homicide took place in a bar. There were approximately ten customers in the bar at the
time the deceased and the shooter quarreled. But many of these witnesses had either left the United
States or been deported during the interim between the murder and the trial eight years later. The
record indicates that other witnesses were apparently too scared to cooperate.
3. In Jones, the court stated, "Nor did the failure of [defendant's] attorneys to offer in evidence
the opinion of a qualified expert as to the unreliability of eyewitness testimony constitute ineffective
assistance of counsel. The likelihood of mistaken identification by [single eyewitness] was brought to
the jury's full attention through cross-examination." 772 F.2d at 674.
4. Some of the examples to which applicant's habeas attorney pointed did not appear to be
hearsay, but rather questions relating to how applicant became a suspect in the case.
5. See Schaffer v. State, 777 S.W.2d 111, 114 (Tex. Crim. App. 1989) (discussing concept of
indirect hearsay); compare Head v. State, 4 S.W.3d 258, 261-62 (Tex. Crim. App. 1999) (explaining
Schaffer, and stating that "the question is whether the strength of the inference produces an
'inescapable conclusion' that the evidence is being offered to prove the substance of an out-of-court
statement").