Vincent Albert DENTON,
Petitioner-Appellee,

v.

James G. RICKETTS and the Attorney
General of the State of Colorado,
Respondents-Appellants.

No. 85–1959.

United States Court of Appeals,
Tenth Circuit.

May 29, 1986.

David R. Little, Asst. Atty. Gen. (Duane Woodard, Atty. Gen., Charles B. Howe, Deputy Atty. Gen., Richard H. Forman, Sol. Gen., and John Milton Hutchins, First Asst. Atty. Gen., Appellate Section, with him on brief), Denver, Colo., for respondents-appellants.

Vicki Mandell-King, Asst. Federal Public Defender (Michael G. Katz, Federal Public Defender, with her on brief), Denver, Colo., for petitioner-appellee.

Before LOGAN and BALDOCK, Circuit Judges, and SAFFELS, District Judge.*

BALDOCK, Circuit Judge.

The State of Colorado appeals from the district court's grant of a writ of habeas corpus setting aside petitioner Vincent Albert Denton's conviction for second degree burglary, theft and conspiracy to commit second degree burglary and theft. This

---

* The Honorable Dale E. Saffels, United States District Judge, District of Kansas, is sitting by designation.

case was before this court once before, *Denton v. Ricketts*, 728 F.2d 489 (10th Cir.1984), where we reversed and remanded an earlier district court grant of a writ of habeas corpus. We held that the magistrate's "investigatory" hearing was insufficient to satisfy the requirements of 28 U.S.C. § 2254(d). On remand, an adversarial evidentiary hearing was held and the district court concluded that petitioner was denied effective assistance of counsel and ordered his release from parole. Because we hold that petitioner was not denied effective assistance of counsel, we reverse.

## I.

In September, 1977, petitioner was charged with second degree burglary, theft of stereo equipment and speakers valued in excess of $200, and conspiracy to commit burglary and theft. Petitioner was tried before a jury on December 1st and 2nd, 1977, and was represented by appointed counsel, Robert Page. Only two witnesses testified at the trial, both for the prosecution: an agent of the Federal Bureau of Investigation (FBI) and the owner of the stolen goods. Through the testimony of these witnesses it was established that the Denver, Colorado, home of Emmitt Kincy was burglarized on May 12, 1977. Among other things, a typewriter, a stereo receiver, a tape recorder and a pair of speakers were stolen.

On the day of the burglary, undercover FBI agents met with Irma Boyd, who was known at the time as Lola. She informed them that she knew someone interested in selling stereo equipment. One of the agents met her at an apartment and she introduced him to petitioner and co-defendant David Carter. In the room was stereo equipment and a typewriter. The FBI agent testified that he negotiated the sale of the stereo equipment with both petitioner and co-defendant Carter. He also testified that petitioner refused to sell the typewriter. Petitioner, Carter and others met the FBI agent at another location to deliver the speakers. The agent paid $125 to Carter and $15 to Lola.

Petitioner was convicted on all counts. Thereafter, attorney Robert Page was permitted to withdraw, and the state's public defender represented petitioner in subsequent state court proceedings. The public defender moved for a new trial, arguing ineffective assistance of counsel. On January 11th and 18th, 1979, the trial judge conducted an adversarial evidentiary hearing and heard testimony from juror Donna Penn, Irma Boyd, co-defendant David Carter, petitioner, and attorney Robert Page. Irma Boyd testified that she was available to testify but was never contacted by petitioner's attorney. David Carter also testified that he had never been contacted by Robert Page but that he would have testified that petitioner had nothing to do with the burglary, theft or stolen goods. Petitioner testified that he asked his attorney to call Toni Fischer, David Carter and Lola as witnesses and requested that Donna Penn be disqualified as a juror.

Robert Page explained that juror Donna Penn was not challenged even though she was a clerical employee of the Denver Sheriff's Department because he believed her answers during voir dire were better than other jurors. He testified that petitioner agreed with this decision. He also stated that he recognized Lola to be a potentially important witness, made several attempts at identifying and locating her, but was unable to do so. Although he never personally interviewed Toni Fischer, he was aware that she knew the speakers were stolen and concluded her testimony would not be helpful. As to David Carter, Page made several attempts to interview him prior to Carter's guilty plea, but was refused access to him. He later decided not to call Carter as a witness because of six or seven prior felony convictions. Attorney Page confessed that he mistakenly believed that the typewriter was not disclosed during discovery, but at trial he successfully alerted the judge that the typewriter was not included in the theft count as an item stolen.

On February 2, 1979, the trial judge heard oral arguments on the motion and

rendered his decision on February 14, 1979. He determined that petitioner's counsel had considered the appropriate factors, had made reasonable tactical decisions, and concluded that petitioner's representation was adequate and effective. On appeal, the Colorado Court of Appeals affirmed petitioner's conviction and specifically rejected his renewed claim of ineffective assistance of counsel.

On November 9, 1981, petitioner filed, pro se, a petition for a writ of habeas corpus in the United States District Court for the District of Colorado. The petition was referred to a United States magistrate who interviewed petitioner, his mother, and Robert Page. Based on these interviews and a review of the record, the magistrate concluded that the state district judge erred as to his determination of effective assistance of counsel and recommended the granting of a writ of habeas corpus ordering petitioner's release from the penitentiary unless given a new trial. The United States District Court adopted the magistrate's recommendations on July 28, 1982. On appeal, we reversed and remanded, finding the magistrate's investigatory hearing insufficient to satisfy the requirements of 28 U.S.C. § 2254(d). *Denton v. Ricketts*, 728 F.2d at 92.

On remand, the magistrate conducted an adversarial evidentiary hearing on July 3, 1984. Petitioner, petitioner's mother and brother, David Carter, and Robert Page testified. The essence of the testimony presented at this hearing does not differ significantly from the information presented at the state court proceeding. The magistrate issued his recommendation on September 21, 1984, concluding that Robert Page had not done enough to identify and locate Lola, that he should have interviewed Toni Fischer and David Carter, and that his mistake concerning the typewriter

was a significant error. The magistrate recommended that petitioner be released from parole unless retried. The district court entered its order on June 4, 1985, adopting the magistrate's findings of fact and conclusions of law, concluding that petitioner was denied effective assistance of counsel and ordering that petitioner be released from parole.

## II.

The sixth amendment entitles the accused to the assistance of counsel.[1] *E.g., Gideon v. Wainwright*, 372 U.S. 335, 340, 83 S.Ct. 792, 794, 9 L.Ed.2d 799 (1963). This constitutional right has been interpreted to mean the right to "effective" assistance of counsel. *McMann v. Richardson*, 397 U.S. 759, 771 n. 14, 90 S.Ct. 1441, 1449 n. 14, 25 L.Ed.2d 763 (1970). In *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the Supreme Court set forth guidelines for determining whether a criminal defendant was deprived of effective assistance of counsel. Reversal is required only when a defendant has shown that counsel's performance was deficient *and* such deficiency prejudiced the defense. *Id.* at 687, 104 S.Ct. at 2064. This has become known as the "performance and prejudice" test. *E.g., Jones v. Smith*, 772 F.2d 668, 673 (11th Cir.1985).

To prove deficient performance, "the defendant must show that counsel's representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688, 104 S.Ct. at 2065. The Court cautioned that "[a] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* at 689, 104 S.Ct. at 2065. Furthermore, "a court must in-

---

1. The "counsel clause" of the sixth amendment provides as follows:

   In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been pre-

viously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining witnesses in his favor, and to have the Assistance of Counsel for his defence.

dulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance...." *Id.* "Judicial scrutiny of counsel's performance must be highly deferential." *Id.* Once attorney error has been established, a defendant must show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694, 104 S.Ct. at 2068. *See also Nix v. Whiteside*, —— U.S. ——, ——, 106 S.Ct. 988, 999, 89 L.Ed.2d 123 (1986).

■ Although findings of fact made in the course of deciding an ineffectiveness claim are subject to deference, the determination that counsel rendered effective or ineffective assistance of counsel is not. *Strickland*, 466 U.S. at 698, 104 S.Ct. at 2070. We agree with the district court's assessment that the magistrate's findings of fact are not materially different from those findings made by the state court. We disagree, however, with the district court's conclusion, derived from those facts, that petitioner's performance was deficient.

There are difficulties inherent in making this evaluation. Although prevailing norms of practice as embodied in bar association standards are helpful, whether a particular attorney's conduct falls within the boundaries of "reasonable professional assistance" will depend upon the particular facts and circumstances presented by a case. While this analysis may be significantly more objective than in the past, any conclusion will be influenced by the subjective reactions and personal judgment of the presiding judge or panel. In this case, the state trial judge believed counsel's performance to be effective whereas the federal magistrate and district judge did not. A degree of subjectivity is necessary, however, because the constitutional requirement cannot be reduced to an objective list of essential elements and must be left to the "good sense and discretion" of the court. *McMann v. Richardson*, 397 U.S. at 771, 90 S.Ct. at 1449.

The district court's conclusion that petitioner was denied effective assistance of counsel is based primarily on three findings: that attorney Page did not do enough to locate Lola, that he should have interviewed David Carter, and that he did not know that evidence concerning the typewriter was admissible. The failure to interview Toni Fischer and the mistake concerning the typewriter were seen as having no significant effect on the outcome of the trial but contributed to the court's conclusion. Both the magistrate and the district judge found Page's investigation inadequate. Neither discussed, however, how the result of the proceeding would have changed had more complete investigation been conducted. We have given careful scrutiny to Page's conduct in light of the facts and circumstances of this case and conclude that he made a reasonable attempt to investigate the whereabouts of Lola and his decision not to interview codefendant Carter was proper.

■ Attorney Page "inquired extensively" of petitioner as to Lola's true identity and where she might be located. Record vol. III at 208. Petitioner gave him a general description and informed him that she could be found at Nora's Lounge. Page testified that he went to the lounge twice to locate her but was unsuccessful. He spoke with the prosecuting attorney concerning Lola's whereabouts and by letter requested the government's assistance in locating her. He also questioned the FBI witness at petitioner's preliminary hearing concerning her identity and location, but all the agent knew was that she was called Lola and that she frequented Nora's Lounge.

■ Petitioner's counsel also made repeated attempts to interview co-defendant Carter but was told by Carter's attorneys that they would not permit the interview. Page later learned of Carter's numerous felony convictions and pending complaints and made the tactical decision not to use him as a witness. His decision to forego an interview is reasonable in light of his

knowledge of Carter's prior criminal history.

▉ Finally, the district court found that attorney Page mistakenly believed that the government could not use the typewriter to link petitioner to the stolen goods. It then reasoned that it was "probable" that this mistaken belief deterred him from pursuing other avenues of defense. We are unable to agree with the district court's premise and conclusion.

Although attorney Page was mistaken about the government's use of the typewriter, he did understand the evidentiary problems associated with it. The state court made the following finding: "I find no merit to the suggestion that Mr. Page was not prepared or aware of the evidentiary problems created by the typewriter; and, indeed, they were argued vigorously during the course of the trial...." Record vol. IV at 256. The state court's findings are presumptively correct and supported by the record. Due to attorney Page's efforts, the trial judge cautioned the jury that they were to consider only those items listed in the information and that the typewriter was not included in the theft count as an item stolen. Moreover, there is no evidence in the record that attorney Page failed to adequately pursue other avenues of defense because of his beliefs regarding the typewriter. Thus, we cannot accept the district court's conclusions on this point.

## III.

Counsel's actions were based properly on informed strategic choices and are well within the range of professionally reasonable judgments. Given the circumstances of the case, we cannot conclude that petitioner has established serious attorney error. Upon reviewing the cumulative effect of these actions, we do not think there is a "reasonable probability" that without them the result of the trial would have been different. It is possible that the outcome might have been different, but this possibility is not "sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694, 104 S.Ct. at 2068. As the Supreme Court has noted, a " 'defendant is entitled to a fair trial but not a perfect one.' " *Bruton v. United States*, 391 U.S. 123, 135, 88 S.Ct. 1620, 1627, 20 L.Ed.2d 476 (1968), *quoting Lutwak v. United States*, 344 U.S. 604, 619, 73 S.Ct. 481, 490, 97 L.Ed. 593 (1953).

Because petitioner received a fair trial and was effectively represented, we reverse and remand with instructions to vacate the order and dismiss the petition.