30 F.3d 141
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 Richard Doren COLLINS, Petitioner-Appellant,
v.
Lou HESSE and Duane L. Woodard, Attorney General of the
State of Colorado, Respondents-Appellees.
 No. 93-1165.
 United States Court of Appeals, Tenth Circuit.
 July 7, 1994.
 
 1
 Before MOORE and KELLY, Circuit Judges, and BRIMMER, District Judge.*
 
 
 2
 ORDER AND JUDGMENT**
 
 
 3
 BRIMMER, District Judge.
 
 
 4
 Appellant Richard Doren Collins appeals from the district court's denial of his Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. Sec. 2254 (1988).
 
 I.
 
 5
 The factual background to Mr. Collins' current appeal surrounds events which occurred in 1982 and ultimately led to the entry of a guilty plea for several offenses. Collins now challenges those convictions because they were used to enhance the sentence which Collins is currently serving.
 
 
 6
 On July 18, 1981, Richard Doren Collins was convicted of second degree burglary and was placed on probation for four years, with ten months to be served in work release in Mesa County, Colorado. While on work release, Collins gave staff personnel information about a burglary ring. Collins contends that the people involved in the burglary ring began to threaten him. Collins claims that because of these threats, one evening he walked away from the work release program and went to a bar where he started to drink. The government contends, however, that Collins had been escaping from the work release facility to burglarize businesses in Grand Junction.
 
 
 7
 Nevertheless, later the same evening Collins broke through a glass window of a jewelry and pawn shop, allegedly to search for a gun. Shortly thereafter, Collins was arrested and taken to the Mesa County Jail. He was charged with four counts of second degree burglary, one count of theft by receiving, escape from the work release center, and violation of probation on the 1981 conviction.
 
 
 8
 Collins entered guilty pleas to the probation violation, one count of second degree burglary, escape, and theft by receiving. Collins subsequently filed motions for a new attorney and to withdraw his guilty plea. Those motions were denied. The state court sentenced Collins to four years for his probation violation, two years for second degree burglary, to run concurrently, and four years on the escape, to run consecutively to the probation violation sentence, and two years for theft by receiving. After sentencing, Collins wrote to the court and his attorney, Mr. Stephen Hodge, several times. He asked Hodge to file an appeal and Hodge refused, telling him that appealing would undermine his chances for the court's reconsideration of his sentence.
 
 
 9
 Collins ultimately served his time and successfully completed his parole on February 18, 1985. Shortly thereafter, he was charged and convicted of rape, armed robbery, burglary, theft, arson, and conspiracy to solicit first degree murder. At sentencing on April 7, 1986, the state court used the 1982 convictions to enhance Collins' sentence to consecutive terms of 20 years-to-life, 20 years-to-life, and 40 years-to-life.
 
 
 10
 In September of 1986, the state court denied Collins' request for reconsideration of his 1982 sentences. In August of 1987, Collins filed a Rule 35(c) motion, again challenging his 1982 sentences, claiming ineffective assistance of counsel and that his plea was involuntary.[1] The state court held an evidentiary hearing and denied the motion, finding that the advisement was sufficient and that there was a factual basis for the plea. The Colorado Court of Appeals denied Collins' appeal on March 30, 1989. That court held that Hodge's advice to plead guilty did not establish coercion and determined that Collins was adequately advised regarding requisite mental states. Finally, the Colorado Supreme Court denied Collins' writ of certiorari on September 18, 1989.
 
 
 11
 Collins then filed a pro se petition for writ of habeas corpus in Federal court in which he challenged his 1982 convictions. Collins claimed that the trial court failed to receive and accept an actual plea of guilty; that he was given ineffective assistance of counsel; and that his guilty plea was involuntary based upon coercion and inadequate advisement by the court. The district court dismissed the petition, holding that Collins failed to establish that his current sentence was enhanced by the Mesa County convictions. On appeal, this Court remanded the case, concluding that the Mesa County convictions were a predicate to the subsequent sentence enhancement, and ordered the district court to consider the validity of the merits Collins' habeas petition. Collins v. Hesse, 957 F.2d 746, 748-49 (10th Cir.1992).
 
 
 12
 On remand, the district court held an evidentiary hearing. The magistrate issued a recommendation that the petition be dismissed. The district court adopted the magistrate's recommendation and dismissed the action. The district court has issued a certificate of probable cause to appeal, pursuant to 28 U.S.C. Sec. 2253. Collins' appeal is now before us.
 
 
 13
 In this appeal Collins makes two arguments: (1) that he received ineffective assistance of counsel with respect to his 1982 guilty plea; and (2) that he was coerced into pleading guilty in 1982 due to misrepresentations and other circumstances surrounding the entry of his plea.
 
 II.
 
 14
 Collins first claims that he was deprived of his right to effective assistance of trial counsel. We review claims of ineffective assistance of counsel de novo. Hopkinson v. Shillinger, 866 F.2d 1185, 1204 (10th Cir.1989); Denton v. Ricketts, 791 F.2d 824, 827 (10th Cir.1986). However, findings of underlying historical fact made in the course of determining an ineffective assistance claim by the district court are entitled to deference. Id. Similarly, factual findings made on the basis of live testimony are binding on the appellate court unless they are clearly erroneous. Archuleta v. Kerby, 864 F.2d 709, 711 n. 2 (10th Cir.1989).
 
 
 15
 It is well-settled law that the Sixth Amendment guarantees criminal defendants the right to counsel;[2] that the right to counsel necessarily includes the right to effective assistance of counsel;[3] that the right to counsel automatically attaches as soon as any formal proceedings commence;[4] and that this right extends to all pre-trial, trial and post-trial proceedings as well as a first appeal of right.[5]
 
 
 16
 In Strickland v. Washington, 466 U.S. 668 (1984), the Supreme Court established a two-part test for evaluating ineffective assistance of counsel claims. This test is applicable to ineffective assistance claims arising out of the plea process. Hill v. Lockhart, 474 U.S. 52, 58 (1985); Laycock v. New Mexico, 880 F.2d 1184, 1187 (10th Cir.1989). Under Strickland, the petitioner bears the burden of demonstrating that "cause and prejudice" exist in order to prevail on this claim. Strickland, 466 U.S. at 687.
 
 
 17
 The cause component requires proof that counsel committed errors that were so deficient that his performance failed to meet the minimal standard of "counsel" required by the Sixth Amendment. Id. When applied to the claim that a plea was involuntary because of ineffective assistance, this standard requires the determination of whether counsel's advice was within the range of competency demanded of attorneys in criminal cases. McMann v. Richardson, 397 U.S. 759, 771 (1970). If this is shown, then the petitioner must prove prejudice--that the errors of his attorney were so serious and prejudicial that they deprived the defendant of a fair trial. Strickland, 466 U.S. at 687.
 
 
 18
 The prejudice component requires a showing that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different[,]" Id. at 694, that is, a probability that is "sufficient to undermine our confidence in the outcome." Id. In the plea context, the defendant must show that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Laycock, 880 F.2d at 1187.
 
 
 19
 Collins argues that his trial counsel, Mr. Hodge, was ineffective throughout his representation of Collins. First, Collins asserts that Hodge, was ineffective in his preparation for trial because Hodge did not adequately consult him. He contends that he needed additional visits with Hodge to resolve the question of whether he would testify and to resolve difficulties with his explanation of events.
 
 
 20
 As the government points out, these allegations are somewhat contradictory: Collins suggests that he needed to prepare for cross-examination, yet at the same time, contends that he had yet to resolve the question of whether he would testify. Moreover, at the providency hearing, Collins stated that he had had sufficient access to his attorney.
 
 
 21
 Collins also claims that Hodge failed to conduct reasonable pre-trial investigation, or prepare for trial. The record demonstrates, however, that Hodge investigated and found that Collins' version of the events that took place appeared to be fabricated. Hodge concluded on the basis of this investigation that Collins' best course of action would indeed be a guilty plea. Collins suggests, nevertheless, that Hodge might have been able to obtain medical records which would support his intoxication defense, if he had performed an adequate investigation. This evidence would have contradicted Collins' stated purpose for escaping and breaking into the stores. In fact, it was Collins' defense that he entered the jewelry/pawn shop in order to obtain a gun to protect himself from individuals who allegedly chased him from the bar where he went to drink immediately after escaping.
 
 
 22
 Collins contends that Hodge's failure to file pre-trial motions constitutes ineffective assistance. Collins challenges Hodge's decision not to move to suppress his confession and his failure to oppose the state's motion to consolidate the charges for trial. In addition, he complains that Hodge did not follow up the court's consolidation of the charges with a request that the charges be placed under one docket number in order to avoid habitual offender exposure. Finally, Collins argues that Hodges should have filed a motion to exclude the evidence or for a continuance in light of the late discovery in the case.[6]
 
 
 23
 Collins does not explain how the existence of any of these pretrial motions would have changed the complexion of the case. With respect to the late discovery, he acknowledges the magistrate's finding that "striking some photographs from evidence would do absolutely nothing to improve petitioner's case," but claims that the magistrate ignored the "tactical advantage of putting the prosecution on the defensive, and the importance which Mr. Hodge attached to these photographs." The fact is, however, that both Mr. Hodge and Mr. Erkenbrack, the prosecutor, agreed that the photographs were merely cumulative evidence in light of witness testimony that was to be offered.
 
 
 24
 In summarizing his complaints about Hodge's trial preparation, Collins maintains that the magistrate and the district court employed the wrong legal standard in evaluating the facts. The magistrate quoted United States v. Rivera, 900 F.2d 1462, 1475 (10th Cir.1990), for the proposition that "the performance of defendant's counsel must be considered in light of the strength of the government's case." Collins asserts that this consideration is inappropriate in the context of a guilty plea and that the appropriate inquiry is the one articulated in Strickland and Laycock for the determination of prejudice. That is, whether "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Laycock, 880 F.2d at 1187. We are not persuaded by this argument.
 
 
 25
 The strength of the government's case is extremely relevant to both the cause and prejudice prongs of the Strickland test for ineffective assistance. With respect to the cause inquiry, the strength of the government's case sheds light upon the reasonableness of counsels' preparation of the defense and upon the soundness of counsel's advice to plead guilty and thus, upon the determination of whether counsel's advice was within the range of competency demanded of attorneys in criminal cases. McMann, 397 U.S. at 771. With respect to the prejudice inquiry, the strength of the government's case certainly helps determine whether, "but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Laycock, 880 F.2d at 1187. Indeed, it would be impossible to fathom circumstances under which the strength of the government's case would not be a primary consideration in a defendant's decision to plead guilty.
 
 
 26
 We have examined the reasonableness of Mr. Hodge's performance "from counsel's perspective at the time of the alleged error[s] and in light of all the circumstances," Kimmelman v. Morrison, 477 U.S. 365, 381 (1986), and have determined that the petitioner has failed to establish that his errors were so deficient that his performance failed to meet the minimal standard of "counsel" required by the Sixth Amendment. What is apparent from the record is that Mr. Collins had no viable defenses to any of the charges for which he pleaded guilty in Mesa County.[7] As this Court noted in Rivera, 900 F.2d at 1474, "When, as here, the prosecution has an overwhelming case, 'there is not too much the best defense attorney can do.' " (citing United States v. Katz, 425 F.2d 928, 930 (2nd Cir.1970)). In light of the circumstances in this case, Hodge's conduct was well within the range of competency demanded of attorneys in criminal cases. See McMann v. Richardson, 397 U.S. 759, 771 (1970). Accordingly, Collins has failed to establish the "cause" prong of his ineffective assistance of counsel claim.
 
 
 27
 Further, even assuming for the sake of argument that Hodge's conduct was deficient, Collins has not established that this conduct prejudiced him; that, but for this conduct, he would not have entered a guilty plea. As the Supreme Court noted in Strickland:
 
 
 28
 [i]t is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding. Virtually every act or omission of counsel would meet that test .. and not every error that conceivably could have influenced the outcome undermines the reliability of the result of the proceeding.
 
 
 29
 466 U.S. at 693. Nothing that Collins claims Hodge should have done would have materially changed the nature of the case such that Collins would have reasonably decided to go to trial. Indeed, with trial, Collins had a near certain chance of conviction and exposure to a potentially greater sentence; by pleading he could receive a favorable deal likely to limit his sentence.
 
 III.
 
 30
 Closely related to Collins' claim of ineffective assistance of counsel is his argument that Hodge's conduct and other circumstances surrounding the entry of his plea rendered his guilty plea involuntary.
 
 
 31
 The question of whether a plea is voluntary is a question of law subject to de novo review. Laycock, 880 F.2d at 1186. A federal court will set aside a state court guilty plea if the plea does not satisfy due process. That is, the circumstances must demonstrate that the defendant understood the nature and the consequences of the charges against him and that the defendant voluntarily chose to plead guilty. Boykin v. Alabama, 395 U.S. 238, 244 (1969). Necessarily, part of the voluntariness inquiry turns on the competency of counsel. Willbright v. Smith, 745 F.2d 779 (2nd Cir.1984).
 
 
 32
 Collins first contends that his plea was involuntary because of Hodge's misrepresentations regarding the length of his sentence. We have stated before that "[a] plea may not be voluntary when an attorney materially misinforms the defendant of the consequences of the plea or the court's probable disposition." Laycock, 880 F.2d at 1186 (citations omitted). Further, while "[a]n erroneous sentence estimate does not render a plea involuntary ... an attorney's unfair representation of probable leniency may be found coercive." Id. (citations omitted). "When an involuntariness claim rests on the faulty legal decisions or predictions of defense counsel, the plea will be deemed constitutionally involuntary only when the attorney is held to have been constitutionally ineffective." Worthen v. Meachum, 842 F.2d 1179, 1184 (10th Cir.1988).
 
 
 33
 Collins claims that Mr. Hodge told him that he faced a potential maximum of eighty years if he did not plead guilty and if he lied during his testimony at trial. Collins' expert testified that the maximum exposure for Collins was sixty years. While there is some dispute about whether Hodge advised Collins that he faced eighty as opposed to sixty years, Hodge's advice was good advice and certainly did not rise to the level of ineffective assistance. Collins did face a potentially large number of years in jail if he decided to go to trial. This advice, even if erroneous, did not render Collins' plea involuntary. See United States v. Broce, 488 U.S. 563, 572 (1989) (pleading guilty entails inherent risk that good faith evaluation of reasonably competent attorney will turn out mistaken either as to the facts or as to what the court's judgment might be on a given set of facts). Moreover, the judge himself advised Collins that the total of his sentences would not exceed sixty years. Clearly, with respect to the potential length of his sentence, Collins' plea was an informed and voluntary one.
 
 
 34
 Collins also argues that Hodge promised him a sentence of six years if he entered a guilty plea. Collins actually received an eight year sentence. The record, however, supports the magistrate's finding that Hodge did not make such a guarantee. Collins' statements during sentencing suggest only that Hodge may have been predicting a likely outcome. As the magistrate noted, immediately before sentencing, Collins stated to the court that Mr. Hodge "told me I was only going to get something like six years...." In addition, at the providency hearing, Collins admitted that no promises other than concurrent sentencing had been made to him. This evidence does not convince us that Hodge's "misrepresentation" unduly coerced or influenced Collins' decision to accept the plea bargain. See Worthen, 842 F.2d at 1184 (attorney's bad guess as the defendant's parole eligibility date is not ineffective assistance).
 
 
 35
 Next, Collins contends that he was coerced into accepting the plea agreement. Collins points to the following factual scenario which occurred on the morning he entered his guilty plea to support this argument. Collins was brought to court for what he believed to be his trial. Instead, in open court, the judge inquired whether the plea bargain was still holding together. Mr. Hodge indicated that it was, even though he had not yet spoken to Collins about the plea. Upon hearing this exchange, Collins asked Hodge what he was doing and told him that he was not going to plead guilty. Hodge told Collins that the prosecutor had just provided additional evidence, the photographs, and that Collins should plead guilty or he would face a possible 80 year sentence.
 
 
 36
 Collins contends that Hodge's advice to plead guilty was motivated, not by his weak case, but by Hodge's lack of preparation for trial. At this point, Collins became infuriated, jumped over a witness stand, and headed toward Hodge. Deputies broke up the ensuing squabble, and handcuffed and removed Collins. Collins was held in jail for one or two hours, during which time Hodge came to see him and convinced him that the plea agreement was in his best interests. Collins was then brought back to court in belly chains, handcuffs and leg shackles.
 
 
 37
 Upon Collins' return to court, the judge took his plea. Collins denied that he was being threatened or that he was under undue pressure. Collins also stated that he was satisfied he had a competent attorney and that he had recovered from the difficulty he had earlier that morning. The court determined that the voluntariness of his plea was not affected by the circumstances or the fact that Collins appeared in handcuffs. The judge then took Collins' guilty plea. It is important to note that Collins present claim contradicts his testimony during the Rule 11 colloquy and that those responses "constitute a formidable barrier in any subsequent collateral proceeding[ ]." Blackledge v. Allison, 431 U.S. 63, 74 (1977).
 
 
 38
 An hour after having returned to jail, Collins telephoned the judge from the county jail and asked permission to withdraw his plea, claiming that he was pressured by Mr. Hodge to plead guilty. The judge told him that he should wait until sentencing to raise the matter. At sentencing, Collins asked for a new attorney and to withdraw his guilty plea. The court denied both motions. Mr. Hodge did not file a motion to withdraw Collins' plea or a motion to withdraw as counsel.
 
 
 39
 These circumstances do not demonstrate that Collins' plea was coerced or involuntary in any other manner. The magistrate appropriately noted that
 
 
 40
 outbursts from defendants who are either immature or emotionally unstable, or both, are not uncommon in criminal proceedings, and need not inevitably result in the withdrawal of current counsel for the accused; plea bargains on the day of trial are so common that many courts, including the state court in this case, apparently, adopt rules which generally prohibit such deals at the last minute; there is no evidence that petitioner was so naive or unaware of his circumstances that he needed additional time, more than the several hours he did take, within which to consider a decision to plead guilty or go to trial....
 
 
 41
 Indeed, the record indicates that Collins learned of the plea agreement at 8:45 a.m. and did not begin to enter his pleas until 11:30 a.m. and the pleas themselves took in excess of an hour. The record also indicates that the state trial judge discussed Collins' rights and his state of mind in painstaking detail. For example, during the Rule 11 advisement, the court asked Collins whether he had "any feeling that you have been rushed into a decision to enter a plea of guilty," or whether, "if you were given some additional time would you have any desire to take that time and think it over as to whether it's a good idea to enter a plea of guilty." Collins answered both questions in the negative. Also at the providency hearing Collins indicated that he was satisfied with his attorney. These circumstances indicate that Collins' plea was not the product of coercion and Collins's change of mind after the entry of his guilty pleas does not negate the fact that his pleas were voluntarily entered.
 
 IV.
 
 42
 In sum, the record demonstrates that Mr. Collins received constitutionally effective assistance of counsel and that his pleas were entered voluntarily. Accordingly, the district court's denial of the petition for writ of habeas corpus shall be AFFIRMED.
 
 
 
 *
 Honorable Clarence A. Brimmer, District Judge, United States District Court for the District of Wyoming, sitting by designation
 
 
 **
 This order and judgment has no precedential value and shall not be cited, or used by any court within the Tenth Circuit, except for purposes of establishing the doctrines of the law of the case, re judicata, or collateral estoppel
 
 
 [1]
 Rule 35(c)(2) of the Colorado Rules of Criminal Procedure provides that "every person convicted of a crime is entitled as a matter of right to make application for postconviction review...."
 
 
 [2]
 See Gideon v. Wainwright, 372 U.S. 335, 338-47 (1963); Argersinger v. Hamlin, 407 U.S. 25, 30-40 (1972)
 
 
 [3]
 See Strickland v. Washington, 466 U.S. 668, 687 (1984)
 
 
 [4]
 See Maine v. Moulton, 474 U.S. 159, 169-70 (1985); Brewer v. Williams, 430 U.S. 387, 398-401 (1977)
 
 
 [5]
 See Evitts v. Lucey, 469 U.S. 387, 393-400 (1985)
 
 
 [6]
 The late discovery consisted of several photographs of Collins at the jewelry/pawn shop which showed that the jewelry cases were broken and that jewelry was scattered on the floor. The Court notes that this evidence is not inconsistent with Collins' version of the events. These photographs were submitted to Hodge the day before trial in an effort to encourage further plea discussions
 
 
 [7]
 The strength of the government's case is demonstrated by the following facts. First, Collins was found and arrested inside a jewelry and pawn shop. Evidence shows that he had smashed several glass cases containing jewelry and that he was holding a gun as the police approached. Second, proving that Collins had escaped would have been as easy as demonstrating that he was not at the work release facility, where he was required to be, but was instead caught inside the jewelry/pawn store. Finally, if Collins were found guilty of either burglary or escape, he would necessarily be guilty of violating his probation