**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**April 27, 2016**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

     Plaintiff - Appellant,

v.

MICHAEL MEDLOCK,

     Defendant - Appellee.

No. 15-5041
(D.C. No. 4:14-CR-00024-GKF-1)
(N.D. Okla. )

---

**ORDER AND JUDGMENT**[*]

---

Before **KELLY**, **GORSUCH**, and **MORITZ**, Circuit Judges.

---

In this interlocutory appeal, the government appeals from the district

court's grant of Defendant-Appellee Michael Medlock's motion for a new trial

and the district court's order denying reconsideration. Fed. R. Crim. P. 33;

United States v. Medlock, No. 14-CR-24-GKF, 2015 WL 1565231 (N.D. Okla.

Apr. 8, 2015) (denying reconsideration). Out of 18 counts charged, Mr. Medlock

was convicted of ten counts of bank fraud and three counts of money laundering;

he was acquitted of five counts of bank fraud. The district court granted the

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

motion for new trial based upon ineffective assistance of counsel.  We exercise

jurisdiction pursuant to 18 U.S.C. § 3731 and affirm.


**Background**

The government's theory is that Mr. Medlock defrauded ONB Bank &

Trust Co. (ONB) by diverting customer payments on accounts receivable that

should have been sent to a bank lockbox account.  The receivables were collateral

for various loans.  To understand the actions—and inaction—of defense counsel,

we begin with a detailed recitation of the facts.

A.  Loan Default and Indictment

In 2003, Mr. Medlock purchased Klutts Equipment, Inc., a company that

buys and sells railroad equipment, through a holding company named Vincens

Omnibus, LLC.  Mr. Medlock funded the purchase with personal assets, an

assumption of Klutts's existing loans, and financing from Local Oklahoma Bank.

About two years later, Local Oklahoma Bank changed hands, and Klutts moved

its accounts to ONB.  Klutts obtained various loans from ONB, granting ONB a

security interest in all of its assets now owned or later acquired, including

accounts receivable.  ONB directed that the account debtors make payments to

ONB by depositing payments directly into an ONB lockbox account.

Klutts eventually fell behind on its loan payments, and in November 2009,

ONB sent a formal demand letter for a deficiency of $58,732.50.  See VI J.A.

1519.  Worried that ONB might exercise its power to freeze the account and prevent future withdrawals, Mr. Medlock consulted with lawyer Ernest A. Bedford.  Medlock, 2015 WL 1565231, at *2.  Mr. Bedford advised Mr. Medlock to open another account so Klutts could continue to operate.  Id.  A month later, ONB froze the lockbox account.  At this time, Mr. Medlock already had an account at Bank of Oklahoma (BOK) for personal use (ending in -0399), and he opened another BOK account (-7837) as well as an account at IBC Bank (-2702).

After Klutts's default, ONB filed suit in January 2010.  In April 2011, ONB obtained a $2.5 million judgment against Mr. Medlock personally, and a receiver was appointed to manage Klutts.  See Aplee. Br. at 7.  ONB then met with federal investigators and filed a suspicious activity report. IV J.A. 832–33.  In 2014, the government indicted Mr. Medlock, alleging he had devised and carried out a scheme to defraud ONB by diverting 15 payments made on accounts receivable away from the lockbox account and into other accounts.[1]  Medlock, 2015 WL 1565231, at *2–3.  Five railroad companies or related entities made these payments between November 2008 and February 2011: Dana Galgana (counts 1–2); Galgana's business Cricket Enterprises (counts 2–3, 5–6, 8–12, 15); Allen Engineering Contractor, Inc. (count 4); Grace Railroad Contractors (count 7); and Progressive Rail, Inc. (counts 13–14).  The payments were addressed to either Mr.

---

[1]  The government states that Mr. Medlock actually diverted 111 payments away from the lockbox, about 40% of Klutts's receivables during the period.  VI J.A. 1319; Aplt. Br. at 3.

Medlock (counts 1–3, 5–6, 8–9, 15), Klutts (counts 4, 7, 10, 14), or

Vincens/Klutts (counts 11–13). The government also charged Mr. Medlock with

three counts of money laundering, resulting from payments allegedly diverted

from the receivables: two payments to Boston College and one payment to

Toyota. I J.A. 17–19. A table summarizing the first 15 counts appears below:

| Count | Result | Date | Bank Acct. | Amount | Payor | Payee |
|-------|--------|------|-----------|--------|-------|-------|
| 1 | Convicted | 11-19-08 | BOK -0399 | $24,681.00 | Galgana | Medlock |
| 2 | Convicted | 12-03-08 | BOK -0399 | $ 9,875.00 | Galgana (Cricket Enter.) | Medlock |
| 3 | Convicted | 12-09-08 | BOK -0399 | $42,000.00 | Cricket Enter. | Medlock |
| 4 | Convicted | 06-17-09 | BOK -0399 | $18,300.00 | Allen Eng'g | Klutts |
| 5 | Acquitted | 08-27-09 | BOK -0399 | $17,000.00 | Cricket Enter. | Medlock |
| 6 | Acquitted | 08-28-09 | BOK -0399 | $10,000.00 | Cricket Enter. | Medlock |
| 7 | Convicted | 09-15-09 | BOK -0399 | $30,250.00 | Grace RR | Klutts |
| 8 | Acquitted | 11-04-09 | BOK -0399 | $ 8,750.00 | Cricket Enter. | Medlock |
| 9 | Acquitted | 02-01-10 | BOK -0399 | $ 6,250.00 | Cricket Enter. | Medlock |
| 10 | Convicted | 04-28-10 | IBC -2702 | $21,735.00 | Cricket Enter. | Klutts |
| 11 | Convicted | 09-10-10 | IBC -2702 | $15,000.00 | Cricket Enter. | Vincens/ Klutts |
| 12 | Convicted | 09-27-10 | IBC -2702 | $ 2,900.00 | Cricket Enter. | Vincens/ Klutts |
| 13 | Convicted | 11-16-10 | IBC -2702 | $42,500.00 | Progressive | Vincens/ Klutts |
| 14 | Convicted | 01-27-11 | BOK -7837 | $45,430.00 | Progressive | Klutts |
| 15 | Acquitted | 02-23-11 | BOK -0399 | $10,454.98 | Cricket Enter. | Medlock |

Throughout his difficulties with ONB, the government investigation, and

the criminal trial, Mr. Medlock retained Mr. Bedford, the attorney he originally consulted in 2009, in some capacity. Medlock, 2015 WL 1565231, at *3. Shortly before the formal indictment, Mr. Bedford was joined by another attorney, Art Fleak, who represented Mr. Medlock at his initial appearance and in pretrial motions. Id.; see also Aplee. Br. at 9.

B. Pretrial Investigation, Defenses, and Conviction

In response to the government's theory that Mr. Medlock defrauded ONB by diverting payments into his personal accounts, Mr. Medlock and his attorneys considered two relevant defenses.

First, Mr. Medlock claimed that the 15 payments allegedly diverted from Klutts's lockbox account were actually commissions for his personal work as a broker that were not covered by the ONB security interest and lockbox arrangement. Medlock, 2015 WL 1565231, at *3. To show the payments were part of his brokerage business, Mr. Medlock compiled information about the 15 challenged transactions for his attorneys. He described the first eight counts in detail, identifying the people and entities involved and explaining how, acting as a broker, he connected the buyer and seller. Id.

Despite receiving this information in advance of the trial, his attorneys did not investigate. Id. at *4. Mr. Bedford testified that he contacted two individuals who were never called as witnesses but none of the parties Mr. Medlock

- 5 -

mentioned.[2] Id.; see also X J.A. 2278. Neither he nor Mr. Fleak issued any

discovery requests to the government or subpoenaed any documents from private

parties—even after a specific request from Mr. Medlock. Medlock, 2015 WL

1565231, at *4. Mr. Medlock stated that he raised concerns that the government

had more documentation on the transactions that involved Mr. Galgana or his

company Cricket Enterprises. Id. But neither attorney lodged an informal or

formal request for additional information. Id.

According to Mr. Medlock, his trial attorneys did not address relevant

details in their direct examination of him or the cross-examination of Mr. Galgana

at trial. During Mr. Medlock's direct examination, Mr. Bedford did not cover the

details of the 15 counts of bank fraud despite the information Mr. Medlock

provided. Id. During Mr. Galgana's cross examination, Mr. Fleak asked no

specific questions about the transactions underlying counts 5, 6, 8–12, 13, and 15.

Id. at *5.

In addition to claiming the 15 transactions were commissions for brokering

deals, Mr. Medlock also planned to argue that after ONB froze the lockbox

account, he deposited the money into other accounts on the advice of his attorney

Mr. Bedford. Id. at *6. In April 2014, Mr. Fleak urged Mr. Bedford and Mr.

Medlock to prepare testimony about their conversation in 2009. In July 2014, Mr.

---

[2] Mr. Fleak testified it was Mr. Bedford's job to contact witnesses.
Medlock, 2015 WL 1565231, at *4 n.1. Mr. Fleak did not contact any witnesses.
Id.

Fleak listed Mr. Bedford as a witness.  The government maintained that Mr.

Bedford could not serve both as a witness and as an attorney because it would

compromise the attorney-client privilege and allow potential questioning about

Mr. Medlock's pre-indictment statements.  Still, just days before the trial, Mr.

Medlock and Mr. Fleak sent emails indicating that Mr. Bedford planned to testify.

Id. at *7.

Two unexpected incidents occurred the day before the trial began.  First,

the government sent defense counsel a one-page summary chart prepared by a

former Klutts employee.  Id. at *5.  The chart, which the government planned to

introduce at trial, included details regarding 26 Klutts invoices from 2010 to

2011, including invoices related to payments from Cricket Enterprises and

Progressive Railroad.  Mr. Medlock dismissed the chart as inconsequential

because all the transactions listed occurred after ONB froze the lockbox—and

therefore would be explained by the advice-of-counsel defense.  Despite Mr.

Medlock's expectations, however, Mr. Bedford abruptly entered an appearance as

counsel that same night, explaining that he would no longer act as a witness.  Mr.

Bedford suggested the defense would "weave in advice of counsel indirectly."  Id.

at *7.

On July 28, 2014, the morning of the trial, Mr. Medlock's attorneys told the

court they would not present an advice-of-counsel defense.  Id.  Apparently, Mr.

Medlock had an emotional outburst in the courtroom concerning the change.  Id.

Mr. Fleak also protested the government's last-minute production of the summary chart but neither he nor Mr. Medlock asked for a continuance to investigate the chart's information. Id. at *5. Four days later, Mr. Medlock was convicted of 10 counts of bank fraud and three counts of money laundering. He was acquitted on five counts of bank fraud.

### C. Post-Trial Motions and Rulings

After the jury verdict, Mr. Medlock obtained new counsel who filed a motion for a new trial asserting, among other things, ineffective assistance of counsel. V J.A. 1040. The trial judge recused herself and the matter was reassigned to a new district judge who granted an evidentiary hearing on Mr. Medlock's motion. At that hearing, the district court ruled from the bench concluding the interests of justice required vacating the judgment and granting a new trial based on ineffective assistance of counsel, namely Mr. Bedford's lack of pretrial investigation and his abandonment of the advice-of-counsel defense at the eleventh hour. X J.A. 2368. The government sought reconsideration. IX J.A. 1886. The district court denied the motion but, upon reconsideration, determined that while the lack of pretrial investigation still constituted ineffective assistance, the last-minute withdrawal of the advice-of-counsel defense did not because: (1) Mr. Medlock did not disclose all relevant facts to Mr. Bedford concerning the obligation to put accounts receivable in the lockbox, and (2) the defense would have been inconsistent with Mr. Medlock's claims that the 15 transactions arose

from his personal brokerage activities. <u>Medlock</u>, 2015 WL 1565231, at \*8. The government then filed this appeal.

## **Discussion**

We review a district court's decision to grant a new trial for abuse of discretion, <u>United States v. Crowe</u>, 735 F.3d 1229, 1244 (10th Cir. 2013), upholding its decision absent such abuse. A district court abuses its discretion when it decides a new trial motion based upon an error of law (which we review de novo) or a material fact that is mistaken (which we review for clear error). <u>Id.</u>; <u>United States v. Jordan</u>, 806 F.3d 1244, 1252 (10th Cir. 2015) (noting that credibility determinations warrant deference). In this case, we apply the familiar test of <u>Strickland v. Washington</u>, 466 U.S. 668, 686 (1984), and analyze whether the district court abused its discretion in concluding that Mr. Medlock was entitled to a new trial given a showing of deficient performance and prejudice. The government maintains neither requirement of <u>Strickland</u> was satisfied, arguing that (1) defense counsel was not constitutionally deficient in the pretrial investigation, and (2) Mr. Medlock did not demonstrate that he was prejudiced by his counsel's errors.

### A. Deficient Performance

First, we must consider whether defense counsel's performance was deficient—whether it "fell below an objective standard of reasonableness."

- 9 -

Strickland, 466 U.S. at 688. We begin with a strong presumption of attorney competence. Kimmelman v. Morrison, 477 U.S. 365, 384 (1986). A defendant can only rebut this presumption by showing an attorney's conduct does not mirror "the exercise of the skill, judgment, and diligence of a reasonable competent defense attorney." Fisher v. Gibson, 282 F.3d 1283, 1292 (10th Cir. 2002) (quoting Osborn v. Shillinger, 861 F.2d 612, 625 (10th Cir. 1988)). The issue is whether a reasonable, competent defense attorney would have undertaken a more thorough investigation on Mr. Medlock's behalf or made a reasonable determination that such an investigation was not necessary. Strickland, 466 U.S. at 691. The district court found that defense counsel failed to satisfy either requirement; we agree.

Although there is no precise formula, an attorney fulfills the requirement to conduct a reasonable investigation when he or she spends time consulting with the defendant, files any necessary discovery and pretrial motions, and makes reasonable efforts to locate parties that could have pertinent information to the case. See generally United States v. Rivera, 900 F.2d 1462 (10th Cir. 1990); Denton v. Ricketts, 791 F.2d 824 (10th Cir. 1986). Conversely, failure to conduct any pretrial investigation constitutes a clear instance of ineffectiveness. See United States v. Gray, 878 F.2d 702, 711 (3d Cir. 1989) (finding counsel's performance was deficient when counsel made virtually no effort to investigate his client's case); see also Williams v. Washington, 59 F.3d 673, 679 (7th Cir.

1995). Here, Mr. Bedford failed to investigate beyond his client. He contacted none of the people involved in the transactions in the indictment except two tangential witnesses who were never called at trial. He made no arrangements to interview government witnesses. He issued no subpoenas. He filed no discovery requests despite Mr. Medlock's specific entreaty that the government was withholding information relevant to several charges against him. See Couch v. Booker, 632 F.3d 241, 246 (6th Cir. 2011) ("It is particularly unreasonable to fail to track down readily available and likely useful evidence that a client himself asks his counsel to obtain."). When Mr. Bedford received evidence from the government on the eve of the trial, he did not seek a continuance. Cf. Snow v. Sirmons, 474 F.3d 693 (10th Cir. 2007) (finding that failing to seek a continuance was objectively reasonable when the district provided a one-day continuance without counsel's request and the witness was vigorously crossed at trial). And we cannot overlook the district court's observation that the last-minute decision to not pursue an advice-of-counsel defense foreclosed an adequate investigation of certain counts in the indictment. When considered in the aggregate, Mr. Bedford's failures constitute ineffective assistance. See Fisher, 282 F.3d at 1293 (finding counsel's representation was objectively unreasonable when, among other things, attorney filed no discovery motions, failed to interview witnesses, and failed to investigate an alibi).

The government argues that after "numerous discussions" with Mr.

Medlock, Mr. Bedford made an informed choice not to pursue any additional investigation, and therefore, his actions were reasonable. Aplt. Br. at 44–45. We cannot find, however, that this decision was an informed one. See Heard v. Addison, 728 F.3d 1170, 1180 (10th Cir. 2013) (noting that a decision not to investigate is not reasonable if it is uninformed). The record shows that Mr. Medlock provided details, including names, dates, and amounts, on the transactions charged in the first eight counts of the indictment. Mr. Bedford made no effort to confirm this information. Even if, as the government argues, Mr. Bedford did not want to unearth "additional ammunition" against his client, see Aplt. Br. at 45, there is no reason he could not have attempted to simply talk to those involved in the transactions or request additional documents. For example, at the evidentiary hearing on Mr. Medlock's motion for a new trial, John McBride of Smith Railway Construction corroborated Mr. Medlock's side brokerage defense, testifying that Mr. Medlock was acting separately from his role at Klutts. Mr. Medlock also offered declarations with similar statements from two other individuals. Furthermore, if Mr. Bedford planned to rely solely on Mr. Medlock's account, he failed to develop it during his direct examination. Mr. Medlock later testified at the evidentiary hearing—and supplied corroborating emails—that the basis for count 11 was merely a loan from Cricket to allow Klutts to make payroll, not a receivable of any kind. X J.A. 2223–24. This was never explained at trial. Although it is certainly true that "[a] defendant is not entitled to an

attorney who will leave not the smallest stone unturned[,] . . . when the defendant has but one stone, it should at least be nudged." Coleman v. Brown, 802 F.2d 1227, 1234 (10th Cir. 1986) (internal quotation marks and citation omitted).

We find ample evidence that defense counsel's investigation did not conform to prevailing professional norms. Insofar as the abandonment of the advice-of-counsel defense,[3] the district court noted that while it might have been tactical, the lateness of the abandonment contributed to the inadequate investigation: had Mr. Medlock been informed earlier that the defense would not be used, he could have provided counsel with detailed information on counts 10 through 14 that may have supported his defense that the payments resulted from his brokerage activities. Medlock, 2015 WL 1565231, at *8.

## B. Prejudice

Next, we shift our focus to prejudice under Strickland. To show defense counsel's actions prejudiced the trial, a defendant must demonstrate that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. The district court concluded that Mr. Medlock made such a showing, finding that the various deficiencies in defense counsel's investigation undermined confidence in the outcome of the proceedings.

---

[3] We need not address the abandonment of the advice-of-counsel defense further as there remain sufficient grounds to uphold the district court's grant of the motion for a new trial.

Here, counsel's failure to investigate has several facets—documentary and testimonial. The government maintains that we must determine how each facet prejudiced all 13 counts of conviction. Under the circumstances of this case, we think that a count-by-count approach would contradict <u>Strickland</u>'s instructions.

When counsel's representation is deficient in several respects, we do not try to measure the result of each individual error; instead we evaluate how the errors affected the overall fairness of the proceeding. <u>See id.</u> at 694–96 (repeatedly stating prejudice inquiry in aggregate terms); <u>see</u> <u>Fisher</u>, 282 F.3d at 1307, 1309 (assessing prejudice from counsel's "numerous" errors and concluding there was a "devastating impact on the defense"); <u>see also</u> <u>Pavel v. Hollins</u>, 261 F.3d 210, 216 (2d Cir. 2001) (examining the cumulative weight of defense counsel's flaws rather than the effect of them standing alone). In making this determination, we consider the totality of the evidence before the jury, cognizant that "[s]ome errors will have had a pervasive effect on the inferences to be drawn from the evidence, *altering the entire evidentiary picture*, and some will have had an isolated, trivial effect." <u>Strickland</u>, 466 U.S. at 695–96 (emphasis added).

Mr. Medlock's trial presents a case where there is a reasonable probability that defense counsel's errors altered the evidentiary landscape. Two considerations compel that conclusion. First, the government alleged the bank fraud and money laundering charges were part of a single scheme to defraud ONB. <u>See</u> Aplt. Reply Br. at 33 (noting the scheme to defraud was far broader

- 14 -

than the 15 individual transactions charged).  That allegation makes Mr. Medlock's case different from those that our sister circuits have held required a finding of prejudice on each and every count of conviction.  In those cases, the defendants were convicted of separate and distinct episodes of criminality.  See Sully v. Ayers, 725 F.3d 1057 (9th Cir. 2013) (failing to find *any* prejudice from counsel's failure to introduce a defendant's diminished mental state when the defendant was convicted of six counts of first-degree murder) (emphasis added); French v. Carter, No. CV410-141, 2012 WL 3757556 (S.D. Ga. Aug. 16, 2012), report and recommendation adopted, No. CV410-141, 2012 WL 4585847 (S.D. Ga. Oct. 2, 2012), aff'd sub nom. French v. Warden, 790 F.3d 1259 (11th Cir. 2015) (failing to find prejudice when defense counsel erred in preserving appellate review for only one of two counts of molestation); Joseph v. United States, No. 04-60128-CR, 2008 WL 4662051 (S.D. Fla. Oct. 20, 2008) (failing to find prejudice when defendant only claimed ineffective assistance related to his conviction for a crack cocaine conspiracy and not his conviction for a cocaine conspiracy).  Here, Mr. Medlock was convicted of multiple counts stemming from a single scheme.

Second, the influence of counsel's deficient investigation was pervasive, potentially affecting everything from opening and closing statements to cross examinations to the presentation of the defense's case-in-chief.  See, e.g., Frost v. Pryor, 749 F.3d 1212, 1233 (10th Cir. 2014) (Lucero, J., dissenting) (noting that

"[g]iven the centrality" of the error, the court's finding of no prejudice was unreasonable).  The absence of a real investigation caused a failure to introduce *any* corroboration for Mr. Medlock's claims despite a showing that such evidence exists.  It also made it difficult for the defense to effectively cross-examine Mr. Galgana, who was involved in numerous payments.  Without offering a viable defense to the 15 counts of bank fraud, defense counsel could not effectively explain the three remaining counts of money laundering that were based on the diverted payments.  These unique aspects of the case simply do not allow us to neatly confine the repercussions of counsel's lackluster investigation.

The government disputes that the consequences were so far-reaching, especially with regard to counts 4, 13, and 14, arguing that the district court's finding of prejudice is merely speculative and asking us to be more specific.  As the district court noted, if the jury was willing to consider Mr. Medlock's uncorroborated and undeveloped defense of a brokerage business, the jury might have been convinced by a more "fulsome explanation" of the remaining transactions.  Medlock, 2015 WL 1565231, at *6.

This is not to say that future cases will never require a showing of prejudice count-by-count, as the government advocates here.  In Mr. Medlock's case, however, defense counsel's errors tainted the fairness of the entire proceeding, particularly because of the nature of the error and the underlying allegation of a single, unitary scheme.

AFFIRMED.

Entered for the Court


Paul J. Kelly, Jr.
Circuit Judge